UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| R&G FINANCIAL CORPORATION | CASE NO   10-04124-11 (ESL) |
| DEBTOR | CHAPTER 11 |

## DEBTOR'S EMERGENCY MOTION TO DETERMINE THAT THE AUTOMATIC STAY APPLIES TO ARBITRATION PROCEEDING

TO THE HONORABLE ENRIQUE S. LAMOUTTE INCLAN
UNITED STATES BANKRUPTCY JUDGE:

R&G Financial Corporation (the "Debtor"), the debtor and debtor in possession in the above-captioned case, hereby moves the Court (the "Motion") for entry of an order (the "Order"), pursuant to 11 U.S.C. §§ 105 and 362, determining that the automatic stay applies to the arbitration complaint lodged against the Debtor before the Financial Industry Regulation Authority by claimants Rebecca A. Diaz-Cruz, Lourdes R. Diaz-Antommattei, and Jose Morales-Steinman.  In support of the Motion, the Debtor respectfully represents:

### Summary of Argument

Prior to August 2007, the Debtor was the sole shareholder of R&G Investments Corporation ("RGIC").  In August 2007, RGIC was formally dissolved, distributed substantially all of its assets to the Debtor and obtained formal certification from the Puerto Rico Department of State documenting its dissolution.  In connection with the agreement to dissolve RGIC, the Debtor agreed to assume all contingent litigation liabilities associated with claims by RGIC's former customers.

Notwithstanding RGIC's dissolution in 2007, three of RGIC's former customers have recently instituted an arbitration proceeding against RGIC and the Debtor relating to the plaintiffs' prior dealings with RGIC. However, it is not appropriate to allow the arbitration plaintiffs to continue their proceeding against RGIC or the Debtor because:

- As RGIC has no assets or resources to participate in a defense of the arbitration proceeding, any action against RGIC would effectively be an action against the Debtor, who has assumed liability for all RGIC claims;

- Resolving the arbitration plaintiffs' rights in the arbitration proceeding, rather than the bankruptcy proceeding, will needlessly consume the Debtor's limited financial and managerial resources; and

- The arbitration proceeding seeks to adjudicate a core matter, the allowance or disallowance of the arbitration plaintiff's claims, which conflicts with the Bankruptcy Code's core goals of centralizing all disputes regarding property of the Debtor's estate

Consequently, for all the reasons set forth above, it is necessary and appropriate for this Court to enter an order determining that the automatic stay applies to protect both the Debtor and RGIC from the arbitration proceeding.

## I. Jurisdiction and Venue

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 156(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 362 and 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

## II. Background

3.      The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 14, 2010 (the "Petition Date"). The Debtor continues to operate its business and

manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case, and no committees have yet been appointed or designated.

4.    The Debtor is a former bank holding company whose principal asset was its 100% interest in R-G Premier Bank of Puerto Rico (the "Bank"). On April 30, 2010 the Bank, along with two other Puerto Rican banks, was closed by the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico (the "OCFI").

5.    Prior to its closure by the OCFI, the Bank provided a full range of banking, mortgage banking, and insurance brokerage services throughout Puerto Rico. For a number of years, the Debtor's subsidiaries also provided banking services in a limited number of cities in Florida. On April 30, 2010, the OCFI closed the Bank and appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver. In the wake of the loss of its principal operating subsidiary, the Debtor filed a voluntary chapter 11 petition on May 14, 2010.

**A.    The Dissolution of RGIC**

6.    Prior to August, 2007, the Debtor owned a 100% interest in RGIC. On June 29, 2007 the Debtor and RGIC entered into an Agreement and Plan of Liquidation and Dissolution (the "Dissolution Agreement"). A copy of the Dissolution Agreement is attached hereto as Exhibit A.

7.    Under the terms of the Dissolution Agreement, RGIC was to transfer substantially all of its assets to the Debtor, and the Debtor was to assume certain liabilities of RGIC, including "any contingent liabilities for lawsuits or claims made by customers of the Subsidiary [RGIC]." Additionally, the Debtor was required to surrender and deliver to RGIC each of its stock

certificates or other ownership interests in RGIC, whereupon RGIC would cancel such shares. Finally, RGIC was to file a certificate of dissolution as soon as practicable, after the date of the Dissolution Agreement. On August 14, 2007, RGIC completed its dissolution, as memorialized in a certificate of dissolution promulgated by the Commonwealth of Puerto Rico Department of State, attached hereto as Exhibit B.

**B.  Proceedings Instituted Against the Debtor and RGIC**

8.      Notwithstanding the dissolution of RGIC in 2007, three of RGIC's former customers, Rebecca A. Diaz-Cruz, Lourdes R. Diaz-Antommattei, and Jose Morales-Steinman (collectively, the "FINRA Plaintiffs"), instituted an arbitration proceeding with the Financial Industry Regulatory Authority ("FINRA") against the Debtor, RGIC, UBS Financial Services Incorporated of Puerto Rico, and Myrsa Acevedo on March 1, 2010 (the "FINRA Arbitration").

9.      On May 17, 2010, counsel for RGIC filed an Informative Motion informing of the Debtor's bankruptcy petition, that RGIC was a wholly owned subsidiary of the Debtor until it ceased operations in 2007, and requesting that the FINRA Arbitration be stayed as to both the Debtor and RGIC.

10.     On May 19, 2010, FINRA informed the Debtor that the FINRA Arbitration would be stayed as to the Debtor and RGIC, and that the arbitration would proceed against co-respondents UBS Financial Services Incorporated of Puerto Rico and Myrsa Acevedo. However, on May 25, 2010, FINRA issued a letter of correction and advised that the FINRA Arbitration would be stayed with respect to the Debtor, pursuant to its bankruptcy notice, but would proceed against RGIC absent a court ordered stay or agreement between the parties.     The FINRA Arbitration is set to commence on June 14, 2010.

## III. Basis for Relief

11.     Section 362 of the Bankruptcy Code operates automatically to stay all actions to obtain possession property of a debtor's bankruptcy estate. 11 U.S.C. § 362. Although the automatic stay belongs to a debtor in bankruptcy, it is well-established law that the stay may also apply under certain circumstances as to actions purportedly against non-debtors. *See In re Codfish Corp.*, 97 B.R. 132, 135 (Bankr. D.P.R. 1988), *Queenie, Ltd. v. NYGARD Int'l*, 321 F.3d 282, 287-288 (2nd Cir. 2003), *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). In fact, this Court has previously held that the automatic stay may apply to other parties in circumstances where the failure to stay actions against the other parties would substantially and adversely affect a debtor's estate. *See In re Codfish Corp.*, 97 B.R. at 135 (applying the automatic stay to a key officer of the debtor that had guaranteed some of the debtor's outstanding bank loans).

12.     The statutory predicate for applying the stay to actions purportedly initiated against non-debtors is found in Section 105 of the Bankruptcy Code, which authorizes a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). That includes determining that the stay applies to collection acts purportedly against non-debtors where permitting such acts could substantially and adversely affect the reorganization of a debtor in bankruptcy. *See Id.* at 135. Exercising those powers is also appropriate in order to centralize all disputes concerning the property of a debtor's estate so that its reorganization can proceed efficiently. *Brown v. Mortg. Elec. Registration Sys. (In re Brown)*, 354 B.R. 591, 595 (D.R.I. 2006).

13.     As discussed in greater detail below, the Court should invoke §§ 362 and 105(a) of the Bankruptcy Code and determine that the automatic stay applies to the FINRA Arbitration because (A) the Debtor is the real party in interest in the FINRA Arbitration; (B) continued prosecution of the FINRA Arbitration will substantially and adversely affect the Debtor's estate; and (C) public interest favors application of the automatic stay to the FINRA Arbitration.

**A.     The Debtor is the Real Party in Interest in the FINRA Arbitration**

14.     RGIC ceased to exist as a corporate entity on August 14, 2007, upon the completion of its dissolution proceedings. Prior to its dissolution, RGIC transferred substantially all of its assets to the Debtor. Thereafter, the Debtor assumed the liabilities of RGIC in accordance with the Dissolution Agreement. Because RGIC dissolved years ago and currently has no assets remaining to satisfy any claims or judgments that may be rendered against RGIC or fund its own defense costs, and because the Debtor is responsible for any liabilities arising from the FINRA Arbitration, RGIC can no longer be the real party in interest in the FINRA Arbitration.

15.     Given the absence of any RGIC assets available to satisfy claims or judgments resulting from the FINRA Arbitration, any adverse ruling against RGIC in the FINRA Arbitration will be collected against the Debtor, who is liable for satisfaction of any FINRA Arbitration liabilities pursuant to both the Dissolution Agreement and Puerto Rico Corporate law. The Debtor, via the Dissolution Agreement, assumed liability for "any contingent liabilities for lawsuits or claims made by customers of the subsidiary [RGIC]." Additionally, any shareholder who receives a liquidating distribution from a dissolved corporation will remain liable, up to the amount of the liquidating distribution from the dissolved corporation, for

judgments relating to lawsuits initiated within three years after the corporation's dissolution. *See* 14 L.R.P.A. §§ 3008, 3012 (2010).

16.     As RGIC's only shareholder, this entire statutory liability would fall on the Debtor. Accordingly, because the Debtor is the only party that will bear any economic risk associated with respect to any claims made against RGIC, the Debtor, not RGIC, is the real party in interest with respect to claims against RGIC. Because the automatic stay currently prevents the initiation of prepetition collection efforts against the Debtor, and the Debtor is the real party in interest with respect to claims made against RGIC, this Court should hold that the automatic stay applies to the FINRA Arbitration's claims against both the Debtor and RGIC.[1] *See In re W.R. Grace & Co.*, 315 B.R. 353, 360 (Bankr. D. Del. 2004)(staying proceeding against a dissolved corporation for which the Debtor had outstanding indemnification obligations because the Debtor would be "directly affected" by allowing such litigation to proceed).

## B.     Continued Prosecution of the FINRA Arbitration will Substantially and Adversely Affect the Debtor's Estate

17.     In light of the substantial and adverse impact that continued prosecution of the FINRA Arbitration would have upon the Debtor's estate, the Court should determine that the automatic stay applies to FINRA Arbitration claims against the Debtor and RGIC because (1) the Debtor's estate will suffer a substantial and adverse impact if the FINRA Arbitration is not

---

[1] Although the FINRA Plaintiffs have not raised this issue, the Debtor submits that it would not be appropriate to allow the FINRA Arbitration to proceed against the Debtor, as doing so would attempt to resolve a core bankruptcy matter, the allowance of the FINRA Plaintiffs' alleged claims against the Debtor, in a parallel proceeding outside of the bankruptcy court. Resolving such core matters outside of the bankruptcy court will needlessly consume additional estate assets and frustrate the Bankruptcy Code's goal of centralizing all disputes regarding the Debtor's estate.

stayed and (2) conversely, the FINRA Planintiffs will suffer little, if any, harm by applying the automatic stay to the FIRNA Arbitration.

>       1.      **The Debtor's estate will suffer a substantial, adverse impact if the FINRA Arbitration is not stayed**

18.     If the automatic stay is not applied to the FINRA Arbitration, the Debtor's estate will necessarily suffer substantial and adverse harm.   Because RGIC does not have any remaining assets, employees, or resources, any costs of defending RGIC in the FINRA Arbitration will necessarily have to be paid by the Debtor's estate.   The FINRA Arbitration involves multiple, complex issues of law.   The FINRA Arbitration includes three named plaintiffs and four named defendants, and resolving potential counterclaims and cross-claims among such parties will certainly be a complex and time consuming affair.  A proper defense of RGIC and/or the Debtor will require a skilled professional to devote significant time to the matter.  Compensating such a skilled professional will deplete valuable estate assets.

19.     The Debtor also has limited managerial resources.   It maintains a very limited staff that manages its day to day affairs, which includes monitoring and complying with all reporting requirements imposed under the Bankruptcy Code.  In light of the Debtor's limited managerial resources, requiring it to prepare for and participate in the demanding, complex, and technical FINRA Arbitration would place a significant drain on its scarce managerial resources. If the Debtor were forced to devote its resources to responding to the FINRA Arbitration, its ability to focus on completing its reorganization may be significantly diminished.

20.     Additionally, if the stay were not applied to the FINRA Arbitration, the Debtor would be forced to defend a "two front" defense of its estate in both the bankruptcy case and the FINRA Arbitration.   Maintaining such a "two front" defense will place further strain on the

Debtor's limited resources and expose the Debtor and other creditors to the risk that the FINRA Arbitration claims will not be adjudicated or examined in a manner similar to the claims of other similarly situated creditors. These risks will undermine the Bankruptcy Code's central goal of centralizing all disputes regarding the Debtor's estate.

21.     Furthermore, because RGIC has no available assets to satisfy any FINRA claims, any potential indemnification obligations or defense costs relating to the FINRA Arbitration will necessarily be borne 100% by the Debtor. This 100% certainty of having to bear 100% of all liability arising from the FINRA claims and defense costs creates a "special circumstance" that "goes beyond the indemnity clause" and justifies application of the stay to the FINRA Arbitration.

**2.     The FINRA Plaintiffs would suffer little, if any harm, if the stay were applied to the FINRA Arbitration**

22.     The FINRA Arbitration complaint does not allege any ongoing wrongs or injuries. Rather, it is solely seeking damages relating to the past actions of RGIC and its agents and employees. If the stay were applied to the FINRA Arbitration, it would merely temporarily stay proceedings with the potential to deplete valuable estate resources, without barring the FINRA Plaintiffs from ever recovering potential claims against the Debtor via the bankruptcy process. The FINRA Plaintiffs will retain the ability to file a proof of claim in the Debtor's bankruptcy case and have the merits of their claim evaluated and administered in accordance with the procedures set forth in the Bankruptcy Code. Such centralized administration of their claims is consistent with the overall goals of the Bankruptcy Code. *In re Brown*, 354 B.R. at 595; *Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*, 399 B.R. 352, 364 (Bankr. D. Mass. 2009).

23.     In fact, because proceeding with the FINRA Arbitration is essentially a roundabout method of asserting a claim against the Debtor's estate, allowing the FINRA Arbitration to proceed will undermine the automatic stay's ultimate goal of preventing "disorderly, piecemeal dismemberment" of the debtor's estate outside of a bankruptcy proceeding. *See Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3 (1st Cir. 2003).

24.     Furthermore, because the three year statute of limitations to bring actions against the Debtor (as shareholder of RGIC) has not expired at the time of this motion, the stay will temporarily toll the statute of limitations and permit the FINRA Arbitration plaintiffs to resume their proceeding as soon as the stay is terminated. *See* 11 U.S.C. 108(c). Consequently, if the stay were applied to the FINRA Arbitration, the FINRA Plaintiffs would not suffer any prejudice associated with the lapse of the statute of limitations.

## C.     Public interest favors the stay

25.     The United States Supreme Court has recognized the automatic stay as one of the most fundamental protections provided by the bankruptcy laws. *Mid-Atlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). The stay is designed to prevent "disorderly, piecemeal dismemberment of the debtor's estate" outside of a bankruptcy proceeding. *Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3 (1st Cir. 2003). If the stay were not applied to the FINRA Arbitration, the purpose of one of the most fundamental bankruptcy protections, the automatic stay, will be undermined by permitting certain parties in interest to proceed in parallel actions outside the Bankruptcy Court that could have the effect of providing differing treatment to similarly situated classes of creditors. Such a proceeding would

constitute the exact sort of "disorderly, piecemeal dismemberment" of the Debtor's estate that the automatic stay is designed to prevent.

26.     Furthermore, as described above, applying the stay to the FINRA Arbitration will help to further the Bankruptcy Code's goal of centralized administration of the assets of a debtor's estate. *In re Brown*, 354 B.R. at 595. This centralized administration will both ensure equal treatment of creditors and permit the Debtor to conserve its scarce administrative resources by minimizing the amount of outside proceedings that the Debtor will need to become involved in to defend its estate. Such centralizing of the claims administration process is consistent with the Bankruptcy Code's goal of avoiding the dissipation of the parties' energies or the estate's resources. *In re Payton Constr. Corp.*, 399 B.R. at 364.

WHEREFORE, the Debtor respectfully requests entry of an order in the form attached hereto and such other and further relief as is just and proper.

Dated: June 8, 2010.                    Respectfully Submitted,

Robert W. Jones
rwjones@pattonboggs.com
Brent McIlwain
bmcilwain@pattonboggs.com
PATTON BOGGS LLP
2000 McKinney Avenue, Suite 1700
Dallas, TX 75201
Telephone:(214) 758-1500
Facsimile: (214) 758-1550

        - and -

  /s/ Jorge I. Peirats
Jorge I. Peirats
jpeirats@pmalaw.com
PIETRANTONI MÉNDEZ & ALVAREZ LLP
Popular Center, 19th Floor
209 Muñoz Rivera Avenue
San Juan, PR 00918
(787) 274-4904
(787) 274-1470 (fax)

Proposed Counsel for the
Debtor and Debtor-in-Possession

## CERTIFICATE OF SERVICE

I certify that on June 8, 2010, a copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the District of Puerto Rico, and (ii) via overnight delivery to the parties on the Service List attached hereto.

/s/ *Jorge I. Peirats*
Jorge I. Peirats

## Service List

| Twenty Largest Unsecured Creditors | | |
|---|---|---|
| American Stock Transfer<br>6201 15th Avenue<br>2nd Floor<br>Brooklyn, NY 11219 | Carlos M. Machado PA<br>2030 Douglas Road, Suite 210<br>Coral Gables, FL 33134 | Bowne of Atlanta, Inc.<br>PO Box 101691<br>Atlanta, GA 30392-1691 |
| AXA Equitable<br>National Operation Center<br>PO Box 1047<br>Charlotte, NC 29201-1047 | Aflac<br>1932 Wynton Rd<br>Columbus, GA 31999-0797 | ADP, Inc.<br>PO Box 9001006<br>Louisville, KY 40290-1006 |
| CT Corporation System<br>PO Box 4349<br>Carol Stream, IL 60197-4349 | National Life Insurance<br>PO Box 366107<br>San Juan PR 00936-6107 | Honorable Secretario de Hacienda<br>Edificio Intendente Ramirez<br>Paseo Covadonga<br>San Juan PR 00901-2618 |
| Fifth Third Bank<br>21 East State Street<br>Columbus, OH 43215 | Zaragoza & Alvarado<br>PO Box 195598<br>San Juan, PR 00919-5598 | VIG Leasing<br>1225 Ponce de Leon Ave<br>VIG Tower, Suite 601<br>San Juan, PR 00907-3921 |
| AT&T<br>PO Box 105068<br>Atlanta, GA 30348-5068 | US Postmaster<br>361 Calaf Street<br>San Juan, PR 00918 | |
| Office of the United States Trustee | | |
| José Díaz-Vega<br>Office of the US Trustee<br>Ochoa Building<br>500 Tanca Street, Suite 301<br>San Juan, PR 00901 | | |
| Secured Creditor | | |
| FirstBank International Branch<br>Box 9146<br>Santurce, PR 00908-0146 | | |
| 5% Shareholders | | |
| Victor Galan Alvarez<br>1225 Ponce De Leon<br>Suite 106, VIG Tower<br>San Juan, PR 00907 | | |
| Other Interested Parties | | |
| Christopher A. Ward<br>Polsinelli Shughart PC<br>222 Delaware Avenue<br>Suite 1101<br>Wilmington, DE 19801 | Juan M. Suarez-Cobo<br>Legal Partners, PSC.<br>138 Winston Churchill Ave<br>Suite 316<br>San Juan, PR 00926-6023 | Manuel Fernandez-Bared<br>Jane Patricia Van Kirk<br>Toro, Colon, Mullet, Rivera & Sifre PSC<br>PO Box 195383<br>San Juan, PR 00919-5383 |
| Susan R. Sherrill-Beard<br>Senior Trial Counsel<br>3475 Lenox Road, N.E., Suite 1000<br>Atlanta, GA 30326-1232 | Rafael E. Lugo-Sotomayor<br>Calle Bayamon #7<br>Hato Rey, PR 00918 | R&G Capital Trust III, V, VI<br>c/o Wilmington Trust Company<br>Corporate Trust Administration<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, DE 19890 |
| FINRA<br>5200 Town Center Circle, Suite 200<br>Boca Raton, FL 33486 | Guillermo Bobonis, Esq.<br>Avenida de Diego 129<br>San Juan, PR 00911-1927 | |

# Exhibit A

## AGREEMENT AND PLAN OF LIQUIDATION AND DISSOLUTION

This Agreement and Plan of Liquidation and Dissolution (the "Agreement") is entered into as of June 29, 2007, by and between R&G Financial Corporation (hereinafter referred to as "RGF" or the "Stockholder"), and R-G Investments Corporation (hereinafter referred to as "RGIC" or the "Subsidiary").

### PREAMBLE

**WHEREAS**, RGF is the sole stockholder and owner of all of the 100,000 issued and outstanding shares of common stock of the Subsidiary, with a par value of $1.00 each (the "Shares"), which are represented by the stock certificate(s) listed in **Schedule 1** (the Stock Certificates");

**WHEREAS**, as reflected in the Statement of Financial Condition of the Subsidiary as of June 29, 2007, attached hereto as **Exhibit A**, RGIC's assets are approximately $10,851,000, its liabilities are approximately $59,000, and its stockholder's equity is approximately $10,792,000;

**WHEREAS**, RGF desires to liquidate the Subsidiary (the "Corporate Liquidation") effective at the close of business on June 29, 2007 (hereinafter referred to as the "Effective Date");

**WHEREAS**, RGF desires to dissolve the Subsidiary (the "Corporate Dissolution") as promptly as practicable following the Effective Date; and

**NOW, THEREFORE**, the parties hereto hereby agree as follows:

### CERTAIN DEFINITIONS

Capitalized terms used in this Agreement that are not otherwise defined shall have the following meanings:

**Agreement** means this Agreement with all Exhibits and Schedules thereto, as amended or supplemented from time to time.

**Client(s)** means any Person who establishes or maintains any existing contractual relationship for obtaining any service or product offered by the Subsidiary.

**Corporate Dissolution** shall have the meaning set forth in the Preamble.

**Corporate Liquidation** shall have the meaning set forth in the Preamble.

**Effective Date** shall have the meaning set forth in the Preamble.

**Intercompany Advance Agreement** means the agreement executed by the Stockholder and the Subsidiary to evidence the advance made to the Stockholder, dated June 7, 2007, in the amount of $8,000,000.00, copy of which is attached hereto as **Exhibit B**.

**GAAP** means United States generally accepted accounting principles established by the Financial Accounting Standards Board as in effect from time to time.

**Person** means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, government or any agency or political subdivision thereof or any other entity.

**Records** means all records, logs and other documents which pertain to and/or are utilized by the Subsidiary, whether maintained in any paper-based or in any electronic or magnetic media.

**Shares** shall have the meaning set forth in the Recitals.

**Assets** means the following assets and rights of the Subsidiary, in each case as recorded on the books of the Subsidiary as of the Effective Date, transferred to RGF under this Agreement:

    i.     the securities owned listed in **Schedule II**;

    ii.    the accrued interest receivable;

    iii.   the prepaid income tax;

    iv.   the deferred tax asset; and

    v.    the furniture, fixtures, and equipment listed in **Schedule III**.

**Liabilities** means the following liabilities and obligations of the Subsidiary, in each case as recorded on the books of the Subsidiary as of the Effective Date, which are being transferred to and assumed by RGF:

    i.     the accrued expenses and other liabilities of the Subsidiary as listed in **Schedule IV**; and

    ii.    any contingent liabilities for lawsuits or claims made by customers of the Subsidiary.

**Stock Certificate** shall have the meaning set forth in the Recitals.

## 1.    LIQUIDATION

1.1    On the Effective Date, the Subsidiary shall transfer and assign all of the Assets, to the Stockholder, in exchange for (i) the assumption by the Stockholder of all of the

Liabilities, (ii) the cancellation of the Intercompany Advance Agreement, and (iii) the complete redemption and cancellation of all of the Shares. Said transfers and assignments shall be evidenced by such public or private instrument as Stockholder shall request.

1.2 On the Effective Date, the Subsidiary shall declare and pay a dividend to RGF (the "Dividend") in the amount of $3,092,516.

1.3 The Stockholder shall endorse for cancellation and deliver to the Subsidiary the Stock Certificate(s) of the Subsidiary, and said Stock Certificate(s) and the Shares represented thereby shall be cancelled or redeemed by the Subsidiary.

1.4 After the close of business on the Effective Date, the Subsidiary shall not engage in any business activities except for the purpose of winding up its affairs and distributing the Subsidiary Assets in accordance with this Agreement. The directors and officers of the Subsidiary shall continue in their respective offices solely for that purpose.

1.5 The parties agree that the value assigned to each of the Subsidiary Assets and the Subsidiary Liabilities, as set forth in the corresponding Schedule, shall be the book value as the same shall appear on the books of the Subsidiary as of the close of business on the Effective Date, and the parties shall account for the liquidation in accordance with GAAP.

1.6 Except as expressly provided in this Agreement, RGF will not assume any liabilities other than the Liabilities and those obligations and liabilities provided under this Agreement.

**2. DISSOLUTION**

2.1 At such time as determined by the Stockholder and as promptly as practicable following the Effective Date, the Subsidiary shall execute a certificate of dissolution, substantially in the form attached hereto as **Exhibit C**, authorizing the dissolution of the Subsidiary in accordance with the provisions of Article 9.05 of the General Corporations Law of 1995, and the Subsidiary shall cause said certificate of dissolution to be filed in the Corporations Division of the Department of State of Puerto Rico on the Dissolution Date.

2.2 Stockholder shall give its approval, in the form attached hereto as **Exhibit D**, as provided by Article 9.05(c) of the General Corporations Law of 1995, to the Corporate Dissolution, in accordance with the foregoing terms of this Agreement.

**3. CORPORATE APPROVALS**

3.1 The execution of this Agreement and of the other agreements and documents referred to in this Agreement, and the performance under each such document, has been duly approved, and no further corporate actions or approvals are required to effect the

Corporate Liquidation and the Corporate Dissolution and the other transactions referred to in this Agreement.

3.2    The Stockholder shall give its approval, substantially in the form attached hereto as **Exhibit E**, to the Corporate Liquidation and the Corporate Dissolution.

3.3    The Subsidiary shall give its approval, substantially in the form attached hereto as **Exhibit F**, to the Corporate Liquidation and the Corporate Dissolution, and to the declaration and payment of the Dividend by RGIC.

3.4    The directors and officers of the Subsidiary shall carry out and consummate this Agreement and shall have the power to adopt all resolutions, and the directors and the President and Vice Presidents, and each of them, shall have all legal powers to act as receivers of the Subsidiary following the effective date of the Corporate Dissolution, and shall have power to execute, and the Secretary and any Assistant Secretary, and each of them, shall have power to attest and to affix the corporate seal to all documents, to file all papers, to maintain any bank account in the name of the Subsidiary, and to take all such other actions as they may deem necessary or desirable for the purpose of effecting the dissolution of the Subsidiary and the complete liquidation of its business, assets, and affairs, and shall further be empowered to discharge on behalf of the Subsidiary any liability or obligation charged against or payable by the Subsidiary after the effective date of the Corporate Dissolution.

## 4.    GENERAL

4.1    This Agreement shall be governed by the laws of the Commonwealth of Puerto Rico.

4.2    This Agreement shall be deemed to include and incorporate by reference any appendices, attachments and exhibits hereof, and any future amendments made to this Agreement and/or to such other documents.

4.3    All notices, requests, demands, consents, and other communications given or required to be given under this Agreement and under the related documents shall be in writing and delivered to the applicable party at the address of its principal offices.

4.4    This Agreement contains the entire understanding of and all agreements between the parties hereto with respect to the subject matter hereof and supersedes any prior or contemporaneous agreement or understanding, oral or written, pertaining to any such matters which agreements or understandings shall be of no force or effect for any purpose.

4.5    This Agreement may not be amended or supplemented in any manner except by mutual agreement of the parties and as set forth in a writing signed by the parties hereto or their respective successors in interest.

4.6     This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the parties hereto have executed this agreement as of the day and year first set forth above.

R&G FINANCIAL CORPORATION

By:
Name: Jose L. Ortiz
Title: Senior Vice President

R-G INVESTMENTS CORPORATION

By:
Name: Leather Cardona Posada
Title: VP Controller

# Exhibit B

566130

Commonwealth of Puerto Rico
**DEPARTMENT OF STATE**
San Juan, Puerto Rico

# CERTIFY

I, **FERNANDO J. BONILLA**, Secretary of State of the Commonwealth of Puerto

Rico,

**CERTIFY**: That on **August 14, 2007** at **3:13 PM**, in "**R-G INVESTMENTS**

**CORPORATION**", register number **118840**, performed the following transaction:

## Dissolution

Previous                                           Present

*ACTIVE*                                   *DISSOLVED*

*Reason:*
*Por el Artículo 9.05 (Ley General*
*de Corporaciones)*

**IN WITNESS WHEREOF**, the undersigned by
virtue of the authority vested by law, hereby
issues this certificate and affixes the Great
Seal of the Commonwealth of Puerto Rico, in
the City of San Juan today, December 6, 2007.

FERNANDO J. BONILLA
Secretary of State

*FJB/mo*
*0478584 – $20.00*

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF PUERTO RICO**

IN RE

R&G FINANCIAL CORPORATION

DEBTOR

Tax ID XX-XXX2217

CASE NO   10-04124

CHAPTER 11

## ORDER GRANTING MOTION TO DETERMINE THAT THE AUTOMATIC STAY APPLIES TO ARBITRATION PROCEEDING

Upon the motion (the "Motion")[2] of the Debtor to Determine that the Automatic Stay Applies to Arbitration Proceeding; and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

**ORDERED, ADJUDGED AND DECREED** that:

1.    The Motion is GRANTED.

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Motion.

2.     The automatic stay applies to, and prohibits the prosecution of the FINRA Arbitration against, the Debtor and RGIC, except as may otherwise be provided by order of this Court.

3.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to the Order in accordance with the Motion.

4.     Notwithstanding the possible applicability of any contrary rules of Federal Bankruptcy Procedure, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5.     This Court shall retain jurisdiction with respect to all matters arising from or relating to the implementation of this order.

**IT IS SO ORDERED.**

Dated:  June _____, 2010

**THE HONORABLE
ENRIQUE S. LAMOUTTE INCLAN
UNITED STATES BANKRUPTCY JUDGE**

CC:     Debtor
        Jorge I. Peirats