IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :        CASE NO. 10-04124 (ESL)
                                                :
R&G FINANCIAL CORPORATION                       :        CHAPTER 11
                                                :
                                                :
        Debtor                                  :
                                                :

OPINION AND ORDER

This case is before the court upon Debtor's motion to determine whether the automatic stay provisions of 11 U.S.C. §§362(a) and 105(a) of the Bankruptcy Code may be extended to R&G Investments Corporation ("RGIC"), a duly dissolved subsidiary of R&G Financial Corporation (hereinafter referred to as "RGFC" or "Debtor"), in relation to certain arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA") (Docket No. 27). On July 16, 2010, Rebecca A. Diaz-Cruz, Lourdes R. Diaz-Antommattei and José Morales-Steinman (hereinafter referred to as the "FINRA claimants") jointly filed their brief and memo in opposition to Debtor's emergency motion for extension of the automatic stay provisions to RGIC arguing that FINRA Rule 13200 governs mandatory application of arbitration proceedings and that the claims in controversy in the FINRA arbitration proceedings are non-core matters unrelated to Debtor's bankruptcy and thus, are governed by the Federal Arbitration Act ("FAA") (Docket No. 77). For the reasons stated herein, Debtor's request for the provisions of the automatic stay to be extended to its duly dissolved subsidiary is hereby granted.

Facts and Procedural Background

RGFC filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 14, 2010. On May 21, 2010, the Clerk of the Court gave notice to creditors, amongst other pertinent information, of the date of the meeting of creditors and of the bar date for all creditors (except a governmental unit) to file a proof of claim, that is, September 21, 2010 (Docket No. 11). RGFC in its original schedules failed to include the claims of the FINRA claimants (Docket Nos. 51). Debtor in line item number four (4) of its Statement of Financial Affairs included the FINRA arbitration

proceedings (Docket No. 50). On June 8, 2010, Debtor filed an urgent motion to determine that the provisions of the automatic stay should be extended to Debtor's dissolved subsidiary, RGIC and thus, stay the FINRA arbitration proceedings based on the following grounds: (i) RGFC, the sole shareholder of RGIC, has assumed liability for all RGIC claims, thus any action against RGIC would be an action against RGFC in conformity with 14 L.P.R.A. §§3008 & 3012; (ii) resolving the FINRA claimants rights in the arbitration proceeding, rather than in the bankruptcy proceeding, will consume the Debtor's limited financial and managerial resources; since preparation for a complex and technical FINRA arbitration proceeding would entail Debtor to deplete estate assets in the preparation of a proper defense for said arbitration, and such arbitration proceedings would significantly drain its scarce managerial resources; (iii) Debtor will have to bear 100% of all costs since RGIC has no available assets to satisfy the defense costs or any potential indemnification obligations which result from the FINRA arbitration proceedings; and (iv) the arbitration proceeding seeks to adjudicate a core matter, namely the allowance or disallowance of the FINRA claimants claims (Docket No. 27). Debtor also filed a motion requesting an emergency hearing to determine that the automatic stay applies to arbitration proceedings (Docket No. 28). Subsequently, the court entered an interim/bridge order enjoining FINRA claimants from further prosecuting the FINRA arbitration against the Debtor and RGIC, until a final order is entered, and scheduled a hearing for July 6, 2010 (Docket No. 31).

The 341 meeting of creditors was held on June 23, 2010, and closed on July 7, 2010 (Docket Nos. 56 & 71). On July 5, 2010, the attorneys representing the FINRA claimants filed a Notice of Appearance and Request of Notices (Docket No. 69). On July 6, 2010, a hearing was held regarding the extension of the automatic stay provisions to RGIC in which the court granted the FINRA claimants ten (10) days to file a legal memorandum in opposition to Debtor's motion to extend the provisions of the automatic stay to RGIC (Docket Nos. 70 & 75).

On July 16, 2010, the FINRA claimants filed their opposition to Debtor's motion to determine that the automatic stay should be extended to RGIC by which they argue the following: (i) FINRA Rule 13200 governs mandatory application of arbitration proceedings; (ii) the claims presented to FINRA arise from a contract amongst the FINRA claimants and RGIC; (iii) the claims in controversy in the FINRA arbitration proceedings are non-core matters unrelated to Debtor's bankruptcy which

do not interfere with the Bankruptcy Code, thus the same are governed by the FAA and courts must enforce the same; (iv) the claims in controversy in the FINRA arbitration proceedings are excepted from the provisions of the automatic stay pursuant to 11 U.S.C. §362(b)(6) because they arose "from securities and investments;" and (v) the arbitration process is the most cost efficient and expedited mechanism to solve the specific and highly specialized controversies (Docket No. 77) . Subsequently, Debtor filed its supplemental brief in support of its position on July 26, 2010 (Docket No. 89) by which it argues that the automatic stay provisions should be extended to RGIC based on the following: (i) the arbitration plaintiffs have failed to establish that RGFC is required to participate in the arbitration proceedings in conformity with the FINRA rules or that it has consented to arbitrate before FINRA; (ii) RGIC has no assets or resources, thus any action against RGIC would effectively be an action against Debtor, who has assumed liability for all RGIC claims; (iii) resolving the FINRA plaintiffs' rights in the arbitration proceedings, rather than in bankruptcy court will consume Debtor's limited financial and managerial resources; (iv) the arbitration plaintiffs have failed to establish "cause" for lifting the automatic stay to permit the arbitration to proceed against Debtor; and (v) the arbitration plaintiffs through the arbitration proceedings are litigating a "core" bankruptcy matter, namely the allowance of a prepetition claim against the Debtor's estate which should be administered by the bankruptcy court (Docket Nos. 27& 89).

On September 10, 2010, Debtor filed an amended Schedule F- Creditors Holding Unsecured Nonpriority Claims whereby it includes the following claims: (i) creditor Rebecca Diaz Cruz is listed as having a contingent, unliquidated and disputed claim in the amount of $0.00; (ii) creditor Lourdes A. Diaz Antommattei is listed as having a contingent, unliquidated and disputed claim in the amount of $0.00; and (iii) creditor José Morales Steinman is listed as having a contingent, unliquidated and disputed claim in the amount of $0.00, namely the claims of the FINRA claimants (Docket No. 130). On September 10, 2010, Debtor also filed a Notice of Amendment to Schedules of Assets and Liabilities by which it informed those creditors which were added in the amended schedules that in conformity with PR LBR 1009-1(c) they had ninety (90) days from the date of service of this document to file a proof of claim, hence the bar date is December 9, 2010 (Docket No. 132). The court notes that as of the issuance of this Opinion and Order the FINRA claimants have not filed proof

of claims in the instant case.

Uncontested Material Facts

1. On June 29, 2007, RGFC and RGIC executed an Agreement and Plan of Liquidation and Dissolution ("Liquidation Agreement") of its subsidiary (Docket No. 27, Exhibit A).

2. Pursuant to the terms of the Liquidation Agreement, RGIC was to transfer certain assets to RGFC, and the latter was to assume certain liabilities of RGIC, including "...any contingent liabilities for lawsuits or claims made by customers of the Subsidiary" (Docket No. 27, Exhibit A).

3. On August 14, 2007, RGIC was duly dissolved per Certification of the Secretary of State of the Commonwealth of Puerto Rico (Docket No. 27, Exhibit B).

4. On March 1, 2010, the FINRA claimants filed their claims against RGIC, RGFC, Myrsa Acevedo and UBS Financial Services Incorporated of Puerto Rico before FINRA in an arbitration proceeding (Docket No. 77).

5. On May 19, 2010, FINRA informed the Debtor that the FINRA arbitration would be stayed as to RGFC and RGIC and that arbitration would proceed against UBS Financial Services Incorporated of Puerto Rico and Myrsa Acevedo.

6. On May 25, 2010, FINRA issued a letter of correction informing that the FINRA arbitration proceedings would be stayed with respect to the Debtor, but would proceed against RGIC absent a court ordered stay or agreement of the parties.

Applicable Law & Analysis

*Extension of automatic stay to Non Debtors pursuant to §§362(a) & 105(a) Procedure & Requirements*

Procedure

A request for extension of the automatic stay provisions of Section 362(a) to a non debtor constitutes an action for injunctive relief and should be initiated by an adversary proceeding. In re Bora Bora, 424 B.R. 17, 24-25 (Bankr. D.P.R., 2010); Fed. R. Bankr. P. 7001(7); See also ; Alan N. Resnick and Henry J. Sommer, 3 Collier on Bankruptcy, ¶362.04[1] (16th ed. 2010)("Rule 7001(7) provides that a request for injunctive relief is governed by part VII of the Bankruptcy Rules. This will mean that when the automatic stay of section 362 does not apply, injunctive relief will have to be

sought by filing a complaint initiating an adversary proceeding and then seeking a temporary restraining order").

"The power of the bankruptcy courts to enjoin certain actions not subject to the automatic stay, such as an action against non debtor parties, has been recognized, when such action is interfering improperly with the purposes of the bankruptcy law or the debtor's reorganization efforts." In re Bora Bora Inc., 424 B.R. 17, 23 (Bankr. D.P.R. 2010) citing A.H. Robins Co., Inc. v. Piccinin, 788 F. 2d 994 (4th Cir. 1986). "Although called an extension of the automatic stay provisions of the Bankruptcy Code to non-debtor parties, these are in fact injunctions issued by a bankruptcy court under 11 U.S.C. §105(a), after determining that the situation requires it in order to protect the interests of the bankruptcy estate." Id. citing In re Cincom ¡Outsource, Inc. 398 B.R. 223, 227 (Bankr. S.D. Ohio, 2008). "Under the Bankruptcy Act, it was believed that the bankruptcy court lacked jurisdiction to issue such an injunction. Under the Code, broad injunctive power is available under section 105, and the issue appears to be one directed to the discretion of the court rather than to its jurisdiction." Alan N. Resnick and Henry J. Sommer, 3 Collier on Bankruptcy, ¶362.04 (16th ed. 2010). A preliminary injunction is an extraordinary and drastic remedy which should only be granted when the movant has carried its burden through clear and convincing evidence. Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997). Thus, the broad injunctive power under Section 105(a) should be used sparingly. In re Lazarus Burman Assoc., 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993).

The court in analyzing whether to extend the protection of the automatic stay to non debtors, must determine if the requirements of both Sections 362(a) and 105(a) are satisfied in order to grant a preliminary injunction extending the provisions of Section 362(a) to non debtors. In re Bora Bora Inc., 424 B.R. at 24 referencing In re Philadephia Newspapers, LLC, 407 B.R. 606 (E.D. Pa. 2009). The court notes that the Debtor failed to follow the appropriate procedural mechanism established in Fed. R. Bankr. P. 7001(7) to request an extension of the automatic stay to a nondebtor. Nonetheless, the court for the sake of expediency, will entertain Debtor's request as a contested matter. Fed. R. Bankr. P. 9014.

*Requirements under Section 362(a)*

Section 362(a)(1) operates as a stay, "...applicable to all entities, of the commencement or

5

continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(1). The scope of the protection of the automatic stay is broad, but it only stays actions against the debtor, hence the protections of the stay do not extend to entities such as, "sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the ... debtors." McCartney v. Integra Nat'l Bank N., 106 F. 3d 506, 509-510 (3rd Cir. 1997) quoting Maritime Elec. Co. v. United Jersey Bank, 959 F. 2d 1194, 1204 (3rd Cir. 1991). However, the protection of the automatic stay may be extended to non debtors if "unusual circumstances" are found such as; "(i) the non debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor; or (ii) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." In re Philadelphia Newspapers, LLC, 407 B.R. at 616.

In the instant case, a Liquidation Agreement was executed on June 29, 2007 between RGFC and its subsidiary RGIC. RGFC at the time of the Liquidation Agreement was the sole stockholder of RGIC. The Liquidation Agreement discloses that RGIC's assets are approximately $10,851,000, its liabilities are approximately $59,000 and its stockholder's equity is approximately $10,792,000. Clause 1.1. of the Liquidation Agreement established that RGIC would transfer to RGFC all the assets (as defined in the Liquidation Agreement) in exchange for the assumption by RGFC of all of the liabilities (as defined in the Liquidation Agreement) namely, the accrued expenses and other liabilities of RGIC and any contingent liabilities for lawsuits or claims made by customers of RGIC; the cancellation of the intercompany advance agreement (defined as "...the agreement executed by the Stockholder and the Subsidiary to evidence the advance made to the Stockholder, dated June 7, 2007, in the amount of $8,000,000.00."); and the complete redemption and cancellation of all the shares. Clause 1.2 of the Liquidation Agreement also establishes that on the effective date (June 29, 2007), RGIC shall declare and pay a dividend to RGFC in the amount of $3,092,516.

The Department of State of the Commonwealth of Puerto Rico issued RGIC's Certificate of Dissolution on August 14, 2007. Article 9.08 of the General Corporations Law of 2009, as amended,

6

of the Commonwealth of Puerto Rico, 14 L.P.R.A. §3708[1] establishes that all dissolved corporations shall continue to exist as a corporate entity for three (3) years from the date of dissolution and it further provides that if any proceeding is commenced before the three (3) year period lapses, the corporation shall continue as a corporate body. Article 9.12 of the General Corporations Law, 14 L.P.R.A. §3712[2], provides that a stockholder of a dissolved corporation, whose assets were distributed, will be liable the lesser of his or her pro rata share of the claim or of the amount actually distributed by the corporation, if the proceeding is commenced prior to the three (3) year term referenced in Article 9.08. This court concludes that RGFC as RGIC's sole stockholder in conformity

---

[1] Article 9.08 of the General Corporations Law of 2009, as amended, provides: "[a]ll corporations, whether they expire by their own limitation or are otherwise dissolved, shall continue to exist as corporate entity for a period of three (3) years from the date of extinction or dissolution, or for any such longer period which the Court of First Instance (Superior Part) may, in its discretion, direct for purposes of advancing any suits initiated by the corporation and continuing the defense of the suits pending against it, whether civil, criminal or administrative, as well as for purposes of liquidating and terminating the business of the corporation, of complying with its obligations and distributing the remaining assets to the stockholders. The legal entity shall not continue for the purpose of continuing the business for which the corporation was organized.

With respect to any action, suit or proceeding filed or initiated by or against the corporation before its extinction, or within the period of three (3) years following its extinction or dissolution, the corporation shall continue as a corporate body after the three (3) year term, and until all judgments, orders or decrees with respect to the aforementioned actions, suits or proceedings are fully executed, without the need for any special provision to that effect by the Court of First Instance (Superior Part)." 14 L.P.R.A. §3708.

[2] Article 9.12 of the General Corporations Law of 2009, as amended, provides: "(a) [a] stockholder of a dissolved corporation whose assets were distributed, to the stockholders shall not be liable for any claim against the corporation in an amount in excess of his pro rata share of the claim or of the amount distributed to him by the corporation, whichever is less.

(b) A stockholder of a dissolved corporation whose assets were distributed to the stockholders shall not be liable for any claim against the corporation in which such action, suit or proceeding is not begun prior to the expiration of the term provided in §3708 of this title.

(c) The total liability of a stockholder of a dissolved corporation for claims filed against the dissolved corporation shall not exceed the amount distributed to the stockholder in the dissolution." 14 L.P.R.A. §3708.

with the General Corporations Law of 2009, as amended of the Commonwealth of Puerto Rico, is statutorily the only party that may be potentially liable to the FINRA claimants depending on the outcome of their claims.

In the instant case, the arbitration proceedings against RGIC are essentially and statutorily against the Debtor, given that their identity of interests are in essence merged into RGFC, as its sole stockholder, and as the real party in interest RGFC will have to prepare and incur all legal defense fees and may ultimately be liable depending on the outcome of the FINRA claimants claims. Thus, the "unusual circumstances" to extend the protection of the automatic stay pursuant to Section 362(a) are present.

*Requirements under Section 105(a)*

The movant requesting the preliminary injunction under Section 105(a) must satisfy the four (4) factor test which consists of the following (1) that the debtor would suffer irreparable injury if the injunction were not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on a defendant; (3) that the debtor has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction. In re Codfish, 97 B.R. 132, 135 (Bankr. D.P.R. 1987) citing In re Supermecado Gamboa, 68 B.R. 230, 232 (Bankr. D.P.R. 1986). "Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction." 11A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d §2949 at 214.

The Supreme Court has stated that, "the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Sampson v. Murray, 415 U.S. 61, 88, 94 S. Ct. 937, 952 39 L. Ed. 2d 166, 185 (1974) (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-507, 3L. Ed. 2d 988, 79 S. Ct, 948 (1959)). "The sine qua non is whether the [movants] are likely to succeed on the merits." Acevedo Garcia v. Vera-Monroig, 296 F. 3d. at 16 (quoting Weaver v. Henderson, 984 F. 2d 11, 12 (1st Cir. 1993)); New Comm Wireless Services, Inc. v. Sprintcom, Inc., 287 F. 3d 1, 9 (1st Cir. 2002). However, the degree of likelihood of success is not determinative as it must be balanced with the hardships caused to the parties if the injunction is not granted. If plaintiff's showing of probable success on the merits is uncertain, he may be entitled to

a preliminary injunction if he demonstrates a strong probability that he will be injured if the court fails to act. 11A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2948.3 at 189 & 194-195. To establish irreparable harm, the movant does not need to show that the injunctive relief will be fatal to the business, only that its legal remedies are inadequate. Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F. 3d 12, 15 (1st Cir. 1996). "If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." Id. The Supreme Court has defined the concept of irreparable harm as follows, "[t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. at 90 (quoting Virginia Petroleum Jobbers Association v. FPC, 104 U.S. App. D.C. 106, 259 F. 2d 921 (D.C. Cir. 1958).

In the instant case this court finds that Debtor would sustain irreparable harm or injury if the continuation of proceedings against RGIC (a defunct entity with no assets) is not stayed, since as already explained herein, Debtor would be the entity legally and financially responsible in providing not only all the legal costs of RGIC's defense in the FINRA arbitration proceedings but also its limited managerial resources would also be diverted in assisting towards the preparation for such proceedings, meaning that its automatic stay protections under Section 362(a)(1) would in essence be violated. Moreover, at this juncture, the FINRA claimants have not requested from this court to lift the automatic stay with respect to the Debtor in order to proceed with the arbitration proceedings.

The second prong of the preliminary injunction test, "likelihood of success," has been defined for the purposes of an injunction in a bankruptcy case "as the probability of a successful reorganization." Lazarus Burman Assocs. v. National Westminster Bank USA (In re Lazarus Burman Assocs.), 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993). The second prong is related to the first prong, given that it would contravene the protections afforded to debtors under Section 362, namely to provide the same a breathing spell by halting all collection efforts and harassment by creditors while permitting the debtor to attempt a plan of reorganization. See H.R. Rep. No. 595, 95th Cong., 1st Sess.

9

340 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 54-55 (1978), reprinted in App. Pt. 4(d)(i) and 4(e)(i) infra. ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy"). Thus, this court finds that Debtor meets the second prong of the preliminary injunction test because it would hamper its attempt for a successful reorganization if the protections of the automatic stay were not provided to Debtor.

The third prong of the preliminary injunction test, the relative harm to be suffered or the balance of relevant positions, is met by the Debtor because the degree of harm that would be imparted to the Debtor and its estate outweighs the harm that the FINRA claimants would face if a preliminary injunction were not issued, given that the preliminary injunction will not invalidate the alleged rights of the FINRA claimants but it will simply delay the enforcement of those rights. See In re Lazarus Burman Assocs., 161 B.R. at 901.

Lastly, the fourth prong of the test, the public interest in the context of a bankruptcy proceeding, consists in promoting a successful reorganization. Id at 901. This court concludes that the public interest is best protected if the Debtor continues to work in their reorganization rather than having to face immediate adverse economic consequences stemming from legal fees in the arbitration proceedings and the syphoning off of its limited managerial resources in such proceedings.

*Exemption from the Automatic Stay under §362(b)(6)*

Section 362(b)(6) exempts from the automatic stay, "...the exercise by a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency of any contractual right (as defined in section 555 or 556) under any security agreement or arrangement or other credit enhancement forming a part of or related to any commodity contract, forward contract or securities contract, or of any contractual right (as defined in section 555 or 556) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more contracts, including any master agreement for such contracts." 11 U.S.C. §362(b)(6). "The Financial Netting Improvements Act of 2006 clarifies that this stay

exception includes the exercise by such entities of any contractual right (as defined in section 555 or 556) under any security agreement, arrangement or other credit enhancement in or related to any commodity contract, forward contract or securities contract." Alan N. Resnick and Henry J. Sommer, 3 Collier on Bankruptcy, ¶362.05[6] (16th ed. 2010).

The FINRA claimants argue that they are exempted from the automatic stay pursuant to the provisions of Section 362(b)(6), but their reliance is misplaced given that such section allows for setoffs, which involve mutual debts and claims, which in turn originate from short-term contracts (such as securities and commodities contracts which involve margin calls) and entered into by certain entities described in said section. The court in the instant case, is simply not before this type of scenario (transaction), rather the FINRA claimants causes of actions arise from alleged violations of securities laws which occurred with respect to RGIC before the same was liquidated on June 29, 2007.

The FINRA claimants citing In re Coachworks Holdings, Inc., 418 B.R. 490 (Bankr. M.D. Ga. 2009) and Smith v. Tricare Rehabilitation Sys. (In re Tricare Rehabilitation), 181 B.R. 569 (Bankr. N.D. Ala. 1994) argue that the existence of pending litigation against the debtor in a non-bankruptcy case may constitute case for lifting the automatic stay. The court in both of these cases was presented with motions for relief from the automatic stay pursuant to Section 362(d)(1). This issue is simply not before the court, given that the FINRA claimants have not filed before the court a motion requesting relief from the automatic stay pursuant to Section 362(d)(1) and (g).

*Mandatory Arbitration under FINRA Rules*

FINRA claimants argue that FINRA Rule 13200 establishes mandatory application of arbitration proceedings. FINRA Rule 13200 must be employed in conformity with the Code of Arbitration Procedure for Industry Disputes. FINRA Rule 13200 provides,

> " (a) Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons.
> (b) Disputes arising out of the insurance business activities of a member that is also an insurance company are not required to arbitrate under the Code." FINRA Rule 13200.

FINRA Rule 13100 defines the following terms:

"(f) Code- The term 'Code' means the Code of Arbitration Procedure for Industry Disputes. For disputes involving customers, see the FINRA Code of Arbitration Procedure for Customer Disputes.

(o) Member- For purposes of the Code, the term 'member' means any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated or cancelled, and any broker or dealer admitted to membership in a self-regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and/or to be treated as members of FINRA for purposes of the Code, whether or not the membership has been terminated or cancelled.

(a) Associated Person- The term 'associated person' or 'associated person of a member' means a person associated with a member, as that term is defined in paragraph (r).

(r) Person Associated with a Member- The term 'person associated with a member' means:
(1) A natural Person who is registered or has applied for registration under Rules of FINRA; or
(2) A sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA." FINRA Rule 13100(a), (f), (o) and (r).

In the instant case, the FINRA claimants are citing FINRA Rule 13200 which is used for industry disputes amongst members of FINRA or persons that are associated with a FINRA member. The dispute in this case is between RGIC (a former FINRA member) and the FINRA claimants which are not FINRA members. Thus, the applicable FINRA Rules would be those in conformity with Code of Arbitration Procedure for Customer Disputes.  FINRA Rule 12200 provides the following:

"Parties must arbitrate a dispute under the Code if: Arbitration under the Code is either:
(1) Required by a written agreement, or
(2) Requested by the customer[3]
The dispute is between a customer and a member[4] or associated person[5] of a

---

[3]FINRA Rule 12100(i) defines customer as, "[a] customer shall not have include a broker or dealer."

[4]FINRA Rule 12100(o) defines member as follows; "[f]or purposes of the Code, the term 'member' means any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated or cancelled; and any broker or dealer admitted to membership in a self regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and/or to be treated as members of FINRA for purposes of the Code, whether

12

member; and

The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company." FINRA Rule 12200.

RGIC is a defunct entity which was duly dissolved on August 14, 2007.[6] FINRA Rule 12202 provides the following regarding claims against inactive members:

"[a] claim by or against a member in one of the following categories is ineligible for arbitration under the Code unless the customer agrees in writing to arbitrate after the claim arises:

A member whose membership is terminated, suspended, cancelled or revoked;
A member that has been expelled from FINRA; or
A member that is otherwise defunct."

In the instant case, the entity that would be incurring in the costs of legally representing RGIC in the arbitration proceedings would be RGFC, because RGIC has no assets since it was liquidated on June 29, 2007. RGFC is not a former or a current FINRA member, or a natural person associated with a member. Thus, FINRA may not oblige RGFC to arbitrate in said arbitration proceedings.

However, this issue does not control the outcome because this court has ordered the provisions of the automatic stay to be extended to RGIC. Moreover, even if RGFC were obligated by the FINRA Rules to participate in said arbitration proceedings, the FINRA claimants would have had to file a

---

or not the membership has been terminated or cancelled."

[5]FINRA Rule 12100(a) defines associated person as follows; "[t]he term 'associated person' or 'associated person of a member means a person associated with a member, as that term is defined in paragraph (r)." FINRA Rule 12100(r) defines person associated with a member as follows; "[t]he term 'person associated with a member' means: (1) A natural person who is registered or has applied for registration under the Rules of FINRA; or (2) A sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA. For purposes of the Code, a person formerly associated with a member is a person associated with a member."

[6]However, without making any factual findings the court assumes that RGIC's membership with FINRA terminated or the same withdrew its application with FINRA on June 26, 2007 pursuant to an online FINRA BrokerCheck Report.

13

motion to compel arbitration before this court, and they have not as of this date.

*The Federal Arbitration Act & Bankruptcy*[7]

The Federal Arbitration Act ("FAA"), 9 U.S.C.S. §1 *et seq.*, requires federal courts to enforce arbitration agreements and to stay litigation that contravenes it. See 9 U.S.C. §§ 2& 3; Burns v. New York Life Ins. Co., 202 F. 3d 616, 620 (2d Cir. 2000). The FAA represents a "congressional declaration of a liberal federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983). However, "like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 226, 96 L. Ed. 2d 185, 107 S. Ct. 2332(1987).

A bankruptcy court presented with a motion to compel arbitration must apply a four (4) prong test which consists of the following: (i) whether the parties agreed to arbitrate; (ii) the scope of the agreement; (iii) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (iv) if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration. Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.), 425 B.R. 78, 87 (Bankr. S.D.N.Y. 2010) (citing Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.), 390 B.R. 784,789)(Bankr. S.D.N.Y. 2008) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F. 3d 72, 75-76 (2d Cir. 1998).

In the instant case, the court has not been presented with a motion to compel arbitration by the FINRA claimants, thus it would be premature for the court to enter into the four prong test analysis and make a determination as to whether the FINRA claimants' claims are core or non-core, and whether the same are arbitrable or non-arbitrable.

---

[7]The parties do not dispute that the FAA applies to arbitration proceedings brought before FINRA.

14

Conclusion

In view of the foregoing, the court finds and concludes as follows: (1) RGFC, as RGIC's sole stockholder in conformity with the General Corporations Law of 2009, as amended of the Commonwealth of Puerto Rico, is statutorily the only party that may be potentially liable to the FINRA claimants depending on the outcome of their respective claims. Thus, the arbitration proceedings against RGIC are essentially and statutorily against the Debtor, given that RGFC as its sole stockholder, and as the real party in interest will be ultimately liable to the FINRA claimants; (2) the "unusual circumstances" to extend to RGIC the protection of the automatic stay pursuant to Section 362(a) are present in the instant case; (3) the exemption from the automatic stay provided by Section 362(b)(6) is simply inapplicable because this particular section allows for setoffs, that involve mutual debts and claims, which in turn originate from short-term contracts (such as securities and commodities contracts which involve margin calls) and entered into by certain entities described in said section. The court is not before this type of transaction, rather the FINRA claimants causes of actions arise from alleged violations of securities laws which occurred prior to the June 29, 2007 liquidation date of RGIC; (4) furthermore, this court finds that the FINRA claimants' argument regarding that the existence of pending litigation against a debtor in a non-bankruptcy forum may constitute cause for lifting the automatic stay is misplaced. The FINRA claimants have not filed before this court a motion requesting relief from the automatic stay pursuant to Section 362(d)(1) and (g); (5) in the instant case, FINRA pursuant to either the Code of Arbitration Procedure for Industry Disputes or the Code of Arbitration Procedure for Customer Disputes may not oblige RGFC to appear in the arbitration proceedings because they have not as of this date filed a motion to compel arbitration before this court; and (6) given that the FINRA claimants have not presented to this court a motion to compel arbitration, it would be premature for this court to enter into the four (4) prong test analysis to determine whether the FINRA claimants' claims are core or non-core and whether the same are arbitrable or non-arbitrable.

In summary, this court concludes that Debtor has satisfied the requirements pursuant to Sections 362(a) and 105(a) for the extension of the automatic stay to be extended to its duly dissolved subsidiary, namely RGIC. Consequently, the Debtor's motion requesting the provisions of the automatic stay to be extended to RGIC is hereby GRANTED.

In San Juan, Puerto Rico, this 17$^h$ day of November 2010.

Enrique S. Lamoutte
United States Bankruptcy Court