# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

| R&G FINANCIAL CORPORATION | CASE NO    10-04124-11 (ESL) |
|---|---|
| DEBTOR | CHAPTER 11 |

---

## DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION

---

Robert W. Jones
Brent McIlwain
Patton Boggs LLP
2000 McKinney Avenue, Suite 1700
Dallas, Texas  75201
Telephone: (214) 758-1500
Facsimile:  (214) 758-1550
rwjones@pattonboggs.com
bmcilwain@pattonboggs.com

Jorge I. Peirats, Esq.
Pietrantoni Mendez & Alvarez, LLP
Popular Center, 19th Floor
209 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 274-1212
Facsimile:  (787) 274-1470
jpeirats@pmalaw.com

Counsel for R&G Financial Corporation,
Debtor and Debtor-in-Possession

Dated: May 31, 2011

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ................................................................. 3
    A.    Defined Terms ............................................................................................................................. 3
    B.    Rules of Interpretation ............................................................................................................... 10
    C.    Exhibits ..................................................................................................................................... 10

ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS ................................................................... 10
    A.    Administrative Claims ............................................................................................................... 10
    B.    Priority Tax Claims ................................................................................................................... 11

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................ 11
    A.    Summary ................................................................................................................................... 11
    B.    Classification and Treatment of Claims and Interests of RGFC .................................................. 11

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................................ 13
    A.    Appointment of a Plan Administrator and a Plan Committee ...................................................... 13
    B.    Fees and Expenses of Liquidating RGFC ................................................................................... 14
    C.    Periodic Reports to Be Filed by Liquidating RGFC .................................................................... 14
    D.    Directors/Officers/Equity/Assets of the Debtor on the Effective Date ......................................... 14
    E.    Plan Administrator .................................................................................................................... 14
    F.    Wind Down and Dissolution of the Debtor ................................................................................ 15
    G.    Cancellation of Existing Securities and Agreements; Claims of Subordination .......................... 15
    H.    Vesting of Assets in Liquidating RGFC ..................................................................................... 16
    I.    Deregistration ........................................................................................................................... 16
    J.    Merger/Dissolution/Consolidation ............................................................................................ 17

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS ................................................................. 17
    A.    Initial Distribution Date ............................................................................................................ 17
    B.    Disputed Claims Reserve .......................................................................................................... 17
    C.    Quarterly Distributions ............................................................................................................. 17
    D.    Record Date for Distributions .................................................................................................... 17
    E.    Delivery of Distributions ........................................................................................................... 18
    F.    Surrender of Canceled Instruments and Securities ..................................................................... 19
    G.    Manner of Cash Payments Under the Plan or the Plan Administrator Agreement ........................ 19
    H.    Time Bar to Cash Payments by Check ....................................................................................... 19
    I.    Compliance with Tax Requirements .......................................................................................... 19
    J.    No Payments of Fractional Dollars ............................................................................................ 20
    K.    Interest on Claims ..................................................................................................................... 20
    L.    No Distribution in Excess of Allowed Amount of Claim ............................................................ 20
    M.    Setoff and Recoupment ............................................................................................................. 20
    N.    Contractual Subordination Rights .............................................................................................. 20

ARTICLE VI. DISPUTED CLAIMS ...................................................................................................... 20
    A.    No Distribution Pending Allowance .......................................................................................... 20
    B.    Resolution of Disputed Claims .................................................................................................. 20
    C.    Objection Deadline ................................................................................................................... 21
    D.    Estimation of Claims ................................................................................................................ 21
    E.    Disallowance of Claims ............................................................................................................ 21

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................... 21
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .................................. 21
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases .................................... 21

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE............... 22
    A.    Conditions to Confirmation: .................................................................................. 22
    B.    Conditions Precedent to the Effective Date ......................................................... 22
    C.    Waiver of Conditions Precedent .......................................................................... 22

ARTICLE IX. RELEASE, INJUNCTION AND RELATED PROVISIONS........................................ 22
    A.    **Exculpation** ........................................................................................................ 22
    B.    **No Release of Co-Obligor or Joint Tortfeasor**............................................... 23
    C.    Preservation of Rights of Action.......................................................................... 23
    D.    **Release and Injunction** ...................................................................................... 24
    E.    Releases of Liens .................................................................................................. 25

ARTICLE X. RETENTION OF JURISDICTION .................................................................................. 25

ARTICLE XI. MISCELLANEOUS PROVISIONS.................................................................................. 26
    A.    Final Fee Applications and Initial Trustee Fees .................................................. 26
    B.    Payment of Statutory Fees ................................................................................... 26
    C.    Modification of Plan ............................................................................................. 26
    D.    Revocation of Plan ............................................................................................... 26
    E.    Successors and Assigns ........................................................................................ 27
    F.    Governing Law ..................................................................................................... 27
    G.    Reservation of Rights............................................................................................ 27
    H.    Section 1146 Exemption....................................................................................... 27
    I.    Section 1125(e) Good Faith Compliance............................................................. 27
    J.    Further Assurances................................................................................................ 27
    K.    Service of Documents ........................................................................................... 27
    L.    Filing of Additional Documents............................................................................ 28
    M.    Aid and Recognition ............................................................................................. 28
    N.    Document Retention.............................................................................................. 28

603381

# DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, R&G Financial Corporation, the Debtor and Debtor-in-Possession in the above-captioned bankruptcy case, hereby respectfully proposes the following plan of liquidation under chapter 11 of the Bankruptcy Code.

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

A.      *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      *"Accrued Professional Compensation"* means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses Allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered prior to the Effective Date, or thereafter in connection with, and only with (a) applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code and (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

2.      *"Administrative Claim Bar Date"* means the first Business Day that is thirty (30) days after the Effective Date and is the deadline for a Holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim in the manner indicated in Article II of the Plan.

3.      *"Administrative Claims"* means Claims that have been timely filed before the Administrative Claim Bar Date, pursuant to the deadline and procedure set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) Accrued Professional Compensation; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

4.      *"Affiliate"* has the meaning set forth at section 101(2) of the Bankruptcy Code.

5.      *"Allowed"* means, with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that has been scheduled by the Debtor in its schedules of liabilities as other than disputed, contingent or unliquidated, unless a Proof of Claim has been timely filed, and as to which the Debtor, the Plan Administrator or other parties-in-interest have not Filed an objection by the Claims Objection Bar Date; (b) a Claim or Interest that has been allowed by a Final Order; (c) a Claim or Interest that is allowed: (i) in any stipulation of the amount and nature of a Claim or Interest executed prior to the Effective Date and approved by the Bankruptcy Court; or (ii) in any stipulation with the Plan Administrator or Liquidating RGFC, as applicable, of the amount and nature of a Claim or Interest executed on or after the Effective Date; (d) a Claim or Interest that is Allowed pursuant to the terms hereof; or (e) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

6. "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor, Liquidating RGFC or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

7. "*Bankruptcy Code*" means title 1 of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in section 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

8. "*Bankruptcy Court*" means the United States District Court for the District of Puerto Rico, having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States Bankruptcy Court for the District of Puerto Rico.

9. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. section 2075, the Local Rules of the United States Bankruptcy Court for the District of Puerto Rico, the Local Rules of the United States District Court for the District of Puerto Rico, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

10. "*Bar Date*" means, with respect to non-governmental units, September 21, 2010, unless a later bar date was dictated by the Bankruptcy Rules, and with respect to governmental units, November 17, 2010.

11. *Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

12. "*Cash*" means legal tender of the United States of America or the equivalent thereof, and with respect to the Disputed Claims Reserve, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally-recognized rating service, or interest-bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

13. "*Causes of Action*" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of the Debtor, the Debtor in Possession, Liquidating RGFC, Wilmington Trust (to the extent authorized under the Derivative Standing Order), and/or the Estate (including, without limitation, those actions set forth in the Plan Supplement) that are or may be pending on the Effective Date or are instituted by the Plan Administrator after the Effective Date against any Entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

14. "*Chapter 11 Case*" means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date, case number 10-04124 in the Bankruptcy Court.

15. "*Claim*" means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtor.

16. "*Claims Objection Bar Date*" means the bar date for objecting to Claims against the Debtor, which shall be six (6) months after the Effective Date; *provided, however*, that the Plan Administrator may seek additional extensions of this date from the Bankruptcy Court for cause shown.

603381

17.  "*Class*" means a category of Holders of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

18.  "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

19.  "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

20.  "*Debtor*" or "*Debtor in Possession*" means R&G Financial Corporation, prior to the Effective Date.

21.  "*Derivative Standing Order*" means the  Order Granting Wilmington Trust Company's Motion for Derivative Standing to Investigate, Assert, and Prosecute Claims Against Officers and Directors, and Authority to Hold, Assert, and If Necessary, Waive Certain Privileges on Behalf of the Estate [ECF No. 207], as amended and modified by the terms of the Order Granting Debtor's Motion to Clarify Order Granting Wilmington Trust Company's Motion for Derivative Standing [ECF No. 216].

22.  "*Disclosure Statement*" means the Disclosure Statement for the Debtor's Chapter 11 Plan of Liquidation, dated May ____, 2011 [ECF No. __], prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time.

23.  "*Disclosure Statement Order*" means that certain order approving the Disclosure Statement dated June ____, 2011 [ECF No. ___].

24.  "*Disputed Claim*" means any Claim that is not yet an Allowed Claim.

25.  "*Disputed Claims Reserve*" means the reserve fund created pursuant to Article V.B.1 of the Plan.

26.  "*Distributions*" means the distributions of Cash to be made in accordance with the Plan and/or the Plan Administrator Agreement.

27.  "*Distribution Record Date*" means the record date for determining the entitlement of Holders of Claims to receive Distributions under the Plan on account of Allowed Claims.  The Distribution Record Date shall be two business days after the Confirmation Date.

28.  "*District Court*" means the United States District Court for the District of Puerto Rico.

29.  "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII.B have been satisfied or waived.

30.  "*Entity*" means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

31.  "*Estate*" means the estate of the Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

32.  "*Exculpated Parties*" means, collectively, the Debtor, the board of directors and individual directors and board committees of the Debtor during the Chapter 11 Case, any officer, contract manager, or employee of the Debtor during the Chapter 11 Case, the Indenture Trustees and each of their respective Representatives (each of the foregoing in its individual capacity as such).

33.  "*FDIC Priority Claims*" means General Unsecured Claims, if any, held by the Federal Deposit Insurance Corporation as receiver for R-G Premier Bank of Puerto Rico entitled to priority under sections 507(a)(9) or 365(o) of the Bankruptcy Code.

34. "*File*" or "*Filed*" means, with respect to any pleading, entered on the docket of the Chapter 11 Case and properly served in accordance with the Bankruptcy Rules or with respect to a Claim, a Claim for which a Proof of Claim has been properly and timely filed in accordance with the Bar Date Order.

35. "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

36. "*FirstBank Settlement*" means the settlement agreement between the Debtor and FirstBank Puerto Rico memorialized in the Order Pursuant to Bankruptcy Code Section 105 and Bankruptcy Rule 9019 Approving Settlements By and Among the Debtor and FirstBank Puerto Rico, dated April 26, 2011 [ECF No. 316].

37. "*General Unsecured Claim*" means a Claim against the Debtor, other than a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Non-FDIC Priority Claim, an FDIC Priority Claim, Interests or a Claim for Trustee Fees.

38. "*Holder*" means any Entity holding a Claim against or an Interest in the Debtor.

39. "*Impaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

40. "*Indentures*" means the Subordinated Indentures.

41. "*Indenture Trustees*" means the Subordinated Indenture Trustees.

42. "*Interests*" means, collectively, RGFC Stock Interests.

43. "*Initial Distribution Date*" means the date on which Liquidating RGFC shall make its initial Distribution, which shall be a date selected by the Plan Administrator as soon as reasonably practicable after the Effective Date.

44. "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

45. "*Liquidating RGFC*" means R&G Financial Corporation on or after the Effective Date.

46. "*Net Free Cash*" means, the amount of Liquidating RGFC's Cash after full payment or satisfaction of, or appropriate reserve for: Allowed, Secured, Administrative, Priority Tax and Non-FDIC Priority Claims; the costs of administering and implementing the Plan; and ordinary business expenses of the Plan Administrator and the Wind Down, *provided, however*, that the reserve for costs of administering and implementing the Plan and ordinary business expenses of the Plan Administrator and the Wind Down shall in no event exceed $___ million.

47. "*Non-FDIC Priority Claims*" means all Claims entitled to priority under sections 507(a)(3) through (a)(7) of the Bankruptcy Code.

48. "*Petition Date*" means May 14, 2010, the date on which the Debtor commenced the Chapter 11 Case.

49. "*Plan*" means this plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement, which is incorporated herein by reference.

50. "*Plan Administrator*" shall be [_____].

51. "*Plan Administrator Agreement*" means the agreement governing, among other things, the retention and duties of the Plan Administrator, if applicable, as described in Article IV.E hereof to be included as an exhibit to the Plan Supplement.

52. "*Plan Committee*" shall be: [_____].

53. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules and exhibits to the Plan.

54. "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

55. "*Pro Rata*" means the ratio of the amount of an Allowed General Unsecured Claim to the aggregate amount of all General Unsecured Claims that have not yet been disallowed.

56. "*Professional*" means any person or Entity employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

57. "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

58. "*Quarterly Distribution Date*" means the first Business Day after the end of each quarterly calendar period (*i.e.*, March 31, June 30, September 30 and December 31 of each calendar year).

59. "*R&G Capital Trust III Debentures*" means the RGFC 6.95% Junior Subordinated Debentures due 2033.

60. "*R&G Capital Trust III Indenture*" means the indenture, dated as of October 6, 2003, by and between RGFC, as issuer, and the R&G Capital Trust III Indenture Trustee.

61. "*R&G Capital Trust III Indenture Trustee*" means Wilmington Trust Company, with respect to the R&G Capital Trust III Debentures.

62. "*R&G Capital Trust V Debentures*" means the RGFC 6.52% Junior Subordinated Debentures due 2034.

63. "*R&G Capital Trust V Indenture*" means the indenture, dated as of March 31, 2004, by and between RGFC, as issuer, and the R&G Capital Trust V Indenture Trustee

64. "*R&G Capital Trust V Indenture Trustee*" means Wilmington Trust Company, with respect to the R&G Capital Trust V Debentures.

65. "*R&G Capital Trust VI Debentures*" means the RGFC 6.62% Junior Subordinated Deferrable Interest Debentures, due 2034.

66. "*R&G Capital Trust VI Indenture*" means the indenture, dated as of November 30, 2004, as supplemented by the First Supplemental Indenture dated as of November 30, 2004, by and between RGFC, as issuer, and the R&G Capital Trust VI Indenture Trustee.

67. "*R&G Capital Trust VI Indenture Trustee*" means Wilmington Trust Company, with respect to the R&G Capital Trust VI Debentures.

68. "*RAC*" means R&G Acquisition Holdings Corp., a Florida Corporation and wholly owned non-debtor subsidiary of R&G Financial Corporation.

69. "*Representatives*" means, with regard to an Entity, officers, directors, members, employees, advisors, attorneys, contract managers or representatives, accountants and agents, and their respective professional firms.

603381

70. "*Residual Net Free Cash*" means, Net Free Cash available to the Debtor after paying the Debtor's Allowed FDIC Priority Claims, if any, in full.

71. *RGFC*" means R&G Financial Corporation, a Puerto Rico corporation.

72. "*RGFC Class A Common Stock Interest*" means a RGFC Stock Interest represented by the 80,000,000 authorized shares of RGFC's Class A Common Stock, $0.01 par value per share, including, without limitation, one of the 21,559,584 shares of Class A Common Stock, $0.01 par value per share, of RGFC issued and outstanding as of the Petition Date, or any interest or right to convert into such a RGFC Stock Interest or acquire any RGFC Stock Interest that was in existence immediately before or on the Petition Date.

73. "*RGFC Class B Common Stock Interest*" means a RGFC Stock Interest represented by the 120,000,000 authorized shares of RGFC's Class B Common Stock, $0.01 par value per share, including, without limitation, one of the 29,625,180 shares of Class B Common Stock, $0.01 par value per share, of RGFC issued and outstanding as of the Petition Date, or any interest or right to convert into such a RGFC Stock Interest or acquire any RGFC Stock Interest that was in existence immediately before or on the Petition Date.

74. "*RGFC Common Stock Interests*" means the RGFC Class A Common Stock Interests and the RGFC Class B Common Stock Interests.

75. "*RGFC FDIC Priority Claims*" means an FDIC Priority Claim against RGFC.

76. "*RGFC General Unsecured Claim*" means a General Unsecured Claim against RGFC that is not a Subordinated Notes Claim.

77. "*RGFC Non-FDIC Priority Claims*" means a Non-FDIC Priority Claim against RGFC.

78. "*RGFC Preferred Stock Interest*" means a RGFC Stock Interest represented by a RGFC Series A Preferred Stock Interest, a RGFC Series B Preferred Stock Interest, a RGFC Series C Preferred Stock Interest, or a RGFC Series D Preferred Stock Interest.

79. "*RGFC Secured Claim*" means a Claim against RGFC that is Secured.

80. "*RGFC Series A Preferred Stock Interest*" means a RGFC Stock Interest represented by one of the 2,000,000 shares of RGFC's 7.40% Series A Non-Cumulative Perpetual Preferred Stock, $25.00 liquidation value per share, issued, authorized, and outstanding as of the Petition Date, or any interest or right to convert into such a RGFC Stock Interest or acquire any RGFC Stock Interest that was in existence immediately before or on the Petition Date.

81. "*RGFC Series B Preferred Stock Interest*" means a RGFC Stock Interest represented by one of the 1,000,000 shares of RGFC's 7.75% Series B Non-Cumulative Perpetual Preferred Stock, $25.00 liquidation value per share, issued, authorized, and outstanding as of the Petition Date, or any interest or right to convert into such a RGFC Stock Interest or acquire any RGFC Stock Interest that was in existence immediately before or on the Petition Date.

82. "*RGFC Series C Preferred Stock Interest*" means a RGFC Stock Interest represented by one of  the 2,760,000 shares of RGFC's 7.60% Series C Non-Cumulative Perpetual Preferred Stock, $25.00 liquidation value per share, issued, authorized, and outstanding as of the Petition Date, or any interest or right to convert into such a RGFC Stock Interest or acquire any RGFC Stock Interest that was in existence immediately before or on the Petition Date.

83. "*RGFC Series D Preferred Stock Interest*" means a RGFC Stock Interest represented by one of the 2,760,000 shares of RGFC's 7.25% Series D Non-Cumulative Perpetual Preferred Stock, $25.00 liquidation value per share, issued, authorized, and outstanding as of the Petition Date, or any interest or right to convert into such a RGFC Stock Interest or acquire any RGFC Stock Interest that was in existence immediately before or on the Petition Date.

84. "*RGFC Stock Interest*" means the interest of any holder of one or more of the equity securities of RGFC (including, without limitation, the RGFC Common Stock Interests, the RGFC Preferred Stock Interests and voting rights, if any, related to such equity securities) that existed immediately prior to the Petition Date, represented by issued and outstanding shares of common or preferred stock or other instruments evidencing a present ownership interest in RGFC, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including, without limitation, unvested restricted stock.

85. "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs, as may be amended from time to time, filed by the Debtor pursuant to section 521 of the Bankruptcy Code.

86. "*Secured*" means when referring to a Claim: (a) secured by a Lien on property in which the Estate of the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

87. "*Subordinated Indenture Trustees*" means, collectively, the R&G Capital Trust III Indenture Trustee, the R&G Capital Trust V Indenture Trustee, and the R&G Capital Trust VI Indenture Trustee.

88. "*Subordinated Indentures*" means, collectively, the R&G Capital Trust III Indenture, the R&G Capital Trust V Indenture, and the R&G Capital Trust VI Indenture.

89. "*Subordinated Notes Claim*" means a General Unsecured Claim arising from or relating to the Trust Preferred Subordinated Debentures.

90. "*Trustee Fees*" means reasonable, documented fees, disbursements, advances and expenses (including, without limitation, professional fees and expenses, and payments made or to be made in connection with indemnity Claims) of each Indenture Trustee incurred pursuant to the respective Indenture and related documents after the Petition Date (including, without limitation, in connection with carrying out their duties as provided for under the applicable Indenture, service on the Plan Committee, and in connection with Distributions under the Plan).

91. "*Trust Preferred Securities*" means, collectively, the Trust Preferred Securities III, the Trust Preferred Securities V, and the Trust Preferred Securities VI.

92. "*Trust Preferred Securities III*" means the securities issued pursuant to the Amended and Restated Declaration of the R&G Capital Trust III, dated October 6, 2003, by and between Wilmington Trust Company, as Trustee, and RGFC as Sponsor.

93. "*Trust Preferred Securities V*" means the securities issued pursuant to the Amended and Restated Declaration of the R&G Capital Trust V, dated March 31, 2004, by and between Wilmington Trust Company, as Trustee, and RGFC as Sponsor.

94. "*Trust Preferred Securities VI*" means the securities issued pursuant to the Amended and Restated Declaration of the R&G Capital Trust VI, dated November 30, 2004, by and Wilmington Trust Company, as Trustee, and RGFC as Sponsor.

95. "*Trust Preferred Subordinated Debentures*" means, collectively, the R&G Capital Trust III Debentures, R&G Capital Trust V Debentures, and the R&G Capital Trust VI Debentures.

96. "*Unimpaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

97. "*U.S. Trustee*" means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the District of Puerto Rico.

98. "*Wilmington Trust*" means Wilmington Trust Company.

99. "*Wind Down*" means the wind down and dissolution of Liquidating RGFC following the Effective Date as set forth in Article IV.F hereof.

B.  *Rules of Interpretation*

1.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (i) any reference to an authorization given or action taken by Liquidating RGF also means an authorization given or action taken by the Plan Administrator, as applicable.

2.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or Allowed hereby.

3.  All references herein to monetary figures shall refer to currency of the United States of America.

C.  *Exhibits*

The Plan Supplement shall include, among other things: (i) the Plan Administrator Agreement; (ii) a list of executory contracts, if any, to be assumed or rejected; (iii) a list of Causes of Action; and (iv) the charter of Liquidating RGFC.  The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court not later than five (5) days prior to the deadline for filing objections to confirmation of the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court.  Holders of Claims or Interests may also obtain a copy of such exhibits, once filed, by contacting counsel for RGFC, Patton Boggs LLP, at (214) 758-1500 or by a written request sent to one of the following addresses:

| | |
|---|---|
| Patton Boggs LLP | Pietrantoni Mendez & Alvarez LLP |
| Attn: R&G Financial Corporation Plan | Attn:  R&G Financial Corporation Plan |
| 2000 McKinney Avenue, Suite 1700 | Popular Center, 19th Floor |
| Dallas, TX 75201 | 209 Muñoz Rivera Avenue |
| | San Juan, PR 00918 |

# ARTICLE II.

# ADMINISTRATIVE AND PRIORITY CLAIMS

A.  *Administrative Claims*

Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, the Debtor, Liquidating RGFC or the Plan Administrator, as applicable, shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash: (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due); (iii) at such later time as may be agreed upon by such Holder and Liquidating RGFC or the Plan Administrator, as applicable; or (iv) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

603381

B.    *Priority Tax Claims*

Liquidating RGFC or the Plan Administrator, as applicable, shall pay each Holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim in Cash, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date such Allowed Priority Tax Claim becomes Allowed; and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Summary*

1.    This Plan constitutes a chapter 11 plan for RGFC. Except for Administrative Claims and Priority Tax Claims, all Claims against and Interests in RGFC are placed in Classes. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Priority Tax Claims, as described in Article II.

2.    The table in Article III.A.3 classifies Claims against and Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class, other than for voting purposes, only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3.    *Summary of Classification and Treatment of Classified Claims and Interests of RGFC*

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | RGFC Secured Claims | Unimpaired | No (deemed to accept) |
| 2 | Non-FDIC Priority Claims | Unimpaired | No (deemed to accept) |
| 3 | FDIC Priority Claims | Impaired | Yes |
| 4 | RGFC General Unsecured Claims | Impaired | Yes |
| 5 | Subordinated Notes Claims | Impaired | Yes |
| 6 | RGFC Preferred Stock Interests | Impaired | No (deemed to reject) |
| 7 | RGFC Common Stock Interests | Impaired | No (deemed to reject) |

B.    *Classification and Treatment of Claims and Interests of RGFC*

1.    *Class 1—RGFC Secured Claims*

(a)    *Classification*: Class 1 consists of all RGFC Secured Claims.

(b)    *Impairment and Voting*: Class 1 is Unimpaired by the Plan. Each Holder of a RGFC Secured Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)    *Treatment*: Except to the extent that a Holder of a RGFC Secured Claim agrees to a less favorable treatment for such Holder, in exchange for full and final satisfaction, settlement, release and discharge of each RGFC Secured Claim, each Holder of an Allowed RGFC Secured Claim shall, at the sole option of the Debtor, Liquidating RGFC or the Plan Administrator, as applicable: (i) be paid in full in Cash, (ii) receive the collateral securing its Allowed RGFC Secured Claim, plus post-petition interest to the extent required under section 506(b) of the Bankruptcy Code, or (iii) receive other treatment rendering such RGFC Secured Claim Unimpaired, in each case on the later of the Effective Date and the date such RGFC Secured Claim becomes an Allowed RGFC Secured Claim, or as soon as practicable thereafter.

2.  *Class 2—RGFC Non-FDIC Priority Claims*

(a)     *Classification*:  Class 2 consists of all RGFC Non-FDIC Priority Claims.

(b)     *Impairment and Voting*:  Class 2 is Unimpaired by the Plan.  Each Holder of a RGFC Non-FDIC Priority Claim is presumed to accept and therefore is not entitled to vote to accept or reject the Plan.

(c)     *Treatment*:  On or as soon as practicable after the Effective Date, Liquidating RGFC or the Plan Administrator, as applicable, shall pay each Holder of an Allowed RGFC Non-FDIC Priority Claim, in full and final satisfaction of such Allowed RGFC Non-FDIC Priority Claim, cash equal to the full amount of its Claim, unless the Holder otherwise agrees to less favorable treatment, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date such Allowed RGFC Non-FDIC Priority Claim becomes Allowed; and (iii) the date such Allowed RGFC Non-FDIC Priority Claim is payable under applicable non-bankruptcy law.

3.  *Class 3—RGFC FDIC Priority Claims*

(a)     *Classification*:  Class 3 consists of all RGFC FDIC Priority Claims.

(b)     *Impairment and Voting*:  Class 3 is Impaired by the Plan.  Each Holder of a Claim that, if Allowed, would constitute a RGFC FDIC Priority Claim, is entitled to vote to accept or reject the Plan.

(c)     *Treatment*:  In full satisfaction, settlement, release and compromise of and in exchange for each RGFC FDIC Priority Claim, Liquidating RGFC or the Plan Administrator, as applicable, shall pay each Holder of an Allowed RGFC FDIC Priority Claim on the Initial Distribution Date and each Quarterly Distribution Date thereafter all Net Free Cash as such Net Free Cash is available on such distribution date until the Allowed RGFC FDIC Priority Claim is paid in full.  The Distribution available to holders of Allowed RGFC FDIC Priority Claims shall be limited by the value of RGFC's Assets after satisfaction of any Allowed RGFC Secured Claims and any Allowed RGFC Non-FDIC Priority Claims.

4.  *Class 4—RGFC General Unsecured Claims*

(a)     *Classification*:  Class 4 consists of all RGFC General Unsecured Claims.

(b)     *Impairment and Voting*:  Class 4 is Impaired by the Plan.  Each Holder of a Claim that, if Allowed, would constitute a RGFC General Unsecured Claim, is entitled to vote to accept or reject the Plan.

(c)     *Treatment*:  In full satisfaction, settlement, release, and compromise of and in exchange for each RGFC General Unsecured Claim, each Holder of an Allowed RGFC Unsecured Claim shall receive on the Initial Distribution Date and each Quarterly Distribution Date thereafter a Pro Rata Distribution of Residual Net Free Cash as such Residual Net Free Cash is available on such distribution date.

5.  *Class 5—Subordinated Notes Claims*

(a)     *Classification*:  Class 5 consists of all Subordinated Notes Claims.

(b)     *Impairment and Voting*:  Class 5 is Impaired by the Plan.  Each holder of a Claim that, if Allowed, would constitute a Subordinated Notes Claim in Class 5 is entitled to vote to accept or reject the Plan.

(c)     *Allowance*:  The Subordinated Notes Claims shall be Allowed in the aggregate amount of $384,996,233.92, comprised of:  (a) $119,069,266.26 on account of the R&G Capital Trust III Debentures; (b) $118,053,644.37 on account of the R&G Capital Trust V Debentures; and (c); $147,873,323.29 on account of R&G Capital Trust VI Debentures.  Except as provided in Article V.N, the Allowed

12

Subordinated Notes Claims shall not be subject to any reductions, setoff, recharacterization, subordination (equitable, contractual or otherwise), counterclaim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation, *provided, however*, that nothing set forth in this paragraph or elsewhere in this Plan is intended to waive, release or otherwise compromise avoidance actions, if any, arising under chapter 5 of the Bankruptcy Code, or objections, if any, to Subordinated Notes Claims pursuant to section 502(d) of the Bankruptcy Code.

(d)　　*Treatment*:  In full satisfaction, settlement, release, and compromise of and in exchange for each Subordinated Notes Claim, each Holder of an Allowed Subordinated Notes Claim shall receive on the Initial Distribution Date and each Quarterly Distribution Date thereafter a Pro Rata Distribution of Residual Net Free Cash as such Residual Net Free Cash is available on such distribution date, *provided, however*, that any distribution to Holders of Allowed Subordinated Notes Claims of Residual Net Free Cash shall be redistributed, subject to Bankruptcy Rule 3021 and subject to any lien or priority rights of the Subordinated Indenture Trustees, pursuant to the subordination provisions of the relevant Indentures, as modified by the terms of the subordination waiver set forth in the FirstBank Settlement.  The relative priorities among holders Allowed Subordinated Notes Claims, and the order in which such holders are entitled to receive payment of their Allowed Claims, are governed by the relevant Indentures, as modified by the terms of the FirstBank Settlement, and nothing in the Plan is intended to or shall conflict with the contractual subordination and subrogation provisions of such Indentures, as modified by the terms of the FirstBank Settlement, which shall govern and shall be enforced pursuant to section 510(a) of the Bankruptcy Code.

6.　*Class 6—RGFC Preferred Stock Interests*

(a)　　*Classification*:  Class 6 consists of all RGFC Preferred Stock Interests.

(b)　　*Impairment and Voting*:  Class 6 is Impaired by the Plan.  Each Holder of a RGFC Preferred Stock Interest in Class 6 is conclusively presumed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(c)　　*Treatment*:  No Holder of RGFC Preferred Stock Interests shall receive any Distribution. The RGFC Preferred Stock Interests in Class 6 shall be deemed transferred to the Plan Administrator as of the Effective Date.  As set forth in Article IV.G.6, immediately thereafter such RGFC Preferred Stock Interests shall be deemed cancelled, terminated and of no further force or effect.

7.　*Class 7—RGFC Common Stock Interests*

(a)　　*Classification*:  Class 7 consists of all RGFC Common Stock Interests.

(b)　　*Impairment and Voting*:  Class 7 is Impaired by the Plan.  Each Holder of a RGFC Common Stock Interest in Class 7 is conclusively presumed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(c)　　*Treatment*:  No Holder of RGFC Common Stock Interests shall receive any Distribution. The RGFC Common Stock Interests in Class 7 shall be deemed transferred to the Plan Administrator as of the Effective Date.  As set forth in Article IV.G.6, immediately thereafter such RGFC Common Stock Interests shall be deemed cancelled, terminated and of no further force or effect.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.　　*Appointment of a Plan Administrator and a Plan Committee*

On the Effective Date, a Plan Administrator and Plan Committee shall be appointed.  The duties, powers and obligations of the Plan Administrator and the Plan Committee shall be set forth in the Plan Administrator

Agreement. Among other things, the Plan Administrator, supervised by and consulting with the Plan Committee, shall be responsible for implementing the Plan, including monetizing or abandoning all of Liquidating RGFC's assets, pursuing or abandoning all Causes of Action, resolving all Claims, and distributing Net Free Cash and Residual Net Free Cash pursuant to the Plan. The Plan Administrator Agreement shall be included in the Plan Supplement and filed in accordance with Article I.C.

B.      *Fees and Expenses of Liquidating RGFC*

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees or expenses of Liquidating RGFC or the Plan Administrator, as applicable (including, without limitation, the reasonable fees and expenses of professionals retained by Liquidating RGFC or the Plan Administrator), shall be paid in accordance with the Plan Administrator Agreement without further order of the Bankruptcy Court.

C.      *Periodic Reports to Be Filed by Liquidating RGFC*

The Plan Administrator shall File periodic reports regarding the administration of Liquidating RGFC's assets, the Distributions made by it and other matters required to be included in such report in accordance with the Plan Administrator Agreement.

D.      *Directors/Officers/Equity/Assets of the Debtor on the Effective Date*

On the Effective Date, the persons then acting as directors, officers, representatives, and/or contract managers of the Debtor shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Debtor or the Chapter 11 Case. Nothing contained in this Article IV.D shall release the Debtor's officers and directors from claims for actions taken before the Effective Date, including, but not limited to, any claims or actions that may be initiated by Wilmington Trust pursuant to the Derivative Standing Order, other than as provided in Article IX.

E.      *Plan Administrator*

1.      On the Effective Date, the Plan Administrator shall succeed to such powers as would have been applicable to the Debtor's officers, directors, representatives, contract managers, and shareholders (subject, at all times, to the oversight of the Plan Committee), and Liquidating RGFC shall be authorized to be (and, upon the conclusion of the Wind Down, shall be) dissolved by the Plan Administrator. All property of the Debtor's Estate not Distributed to the Holders of Claims or Interests on the Effective Date shall be transferred to Liquidating RGFC and managed and Distributed by the Plan Administrator pursuant to the terms of the Plan Administrator Agreement and the Plan and shall be held in the name of Liquidating RGFC free and clear of all Liens, Claims, charges or other encumbrances against the Debtor and the Interests in the Debtor except for rights to such Distributions provided to Holders of Allowed Claims as provided herein.

2.      As provided in the Plan Administrator Agreement, the Entity chosen to be the Plan Administrator shall have such qualifications and experience to enable it to perform its obligations under the Plan and under the Plan Administrator Agreement. Following the Effective Date and in the event of the resignation or removal, liquidation, dissolution, death or incapacity of the Plan Administrator, the Plan Committee shall designate another Entity to become Plan Administrator and such Entity will become the successor Plan Administrator and, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor Plan Administrator. The Plan Administrator's reasonable costs and expenses shall be compensated and reimbursed by Liquidating RGFC as set forth in, and in accordance with, the Plan Administrator Agreement.

3.      The Plan Administrator shall be deemed the representative of the Debtor's Estate in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Plan Administrator Agreement, including, without limitation (and except as otherwise provided in the Plan Administrator Agreement), the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, including, without limitation, the right to (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Plan Administrator Agreement, (b) prosecute, settle, abandon or compromise any Causes of Action, (c) make Distributions contemplated hereby, (d) establish and administer the Disputed Claims Reserve, (e) object to Claims and prosecute, settle, compromise, withdraw or

resolve in any manner approved by the Bankruptcy Court objections to such claims, and (f) employ and compensate professionals and other agents, including one or more of the Professionals.

F.    *Wind Down and Dissolution of the Debtor*

After the Effective Date, Liquidating RGFC shall remain in existence for the sole purpose of liquidation, distribution and dissolution.  On and after the Effective Date, the Plan Administrator shall make Distributions under the Plan and shall implement the dissolution of Liquidating RGFC and monetization of any assets of Liquidating RGFC pursuant to the Plan Administrator Agreement, any other provision of the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve Liquidating RGFC.  As soon as practicable after the Effective Date, the Plan Administrator shall:  (a) take any action reasonably necessary to effectuate the Wind Down; (b) file for Liquidating RGFC, a certificate of dissolution, together with all other necessary corporate and company documents, to effect the dissolution of Liquidating RGFC under applicable non-bankruptcy law; (c) complete and file all final or otherwise required federal, state and local tax returns of the Debtor or Liquidating RGFC, as applicable, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of Liquidating RGFC, the Debtor or its Estate for any tax incurred during the administration of the Chapter 11 Case, as determined under applicable tax laws; (d) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan; and (e) comply with any regulatory requirements imposed on Liquidating RGFC under applicable law.  The filing by the Plan Administrator of a certificate of dissolution on behalf Liquidating RGFC shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or the board of directors of the Debtor, as applicable.

G.    *Cancellation of Existing Securities and Agreements; Claims of Subordination*

1.    On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates and other documents evidencing the Subordinated Notes Claims, including the Trust Preferred Subordinated Debentures and the Trust Preferred Securities, shall be deemed automatically canceled, shall be of no further force or effect, whether surrendered for cancellation or otherwise, and the obligations of the Debtor thereunder or in any way related thereto shall be discharged.

2.    On the Effective Date, except to the extent otherwise provided herein, any indenture, guarantee or other agreement relating to any of the foregoing, including, without limitation, the Indentures, shall be deemed automatically canceled and terminated, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and the obligations of the Debtor thereunder shall be discharged.

3.    As of the Effective Date, the transfer register or ledger maintained by the Indenture Trustees for the Trust Preferred Subordinated Debentures and the Trust Preferred Securities shall be closed, and there shall be no further changes in the record Holders of any Trust Preferred Subordinated Debentures or Trust Preferred Securities.

4.    Notwithstanding Article IV.G.1 and Article IV.G.2, the Trust Preferred Subordinated Debentures, the Trust Preferred Securities and the Indentures shall continue in effect solely for purposes of (i) allowing the Indenture Trustees to receive Distributions under the Plan on behalf of the Holders of the Trust Preferred Subordinated Debentures and Trust Preferred Securities, (ii) thereafter, allowing the Indenture Trustees to make Distributions to Holders of the Trust Preferred Subordinated Debentures and Trust Preferred Securities, (iii) permitting the Indenture Trustees to maintain any rights and charging Liens they may have against distributions or property held or collected by the Indenture Trustees for fees, costs and expenses pursuant to the Indentures, or for indemnification as provided for under the Indentures; (iv) permitting the Indenture Trustees to serve on the Plan Committee after the Effective Date; (v) permitting, but not requiring, the Indenture Trustees to exercise their rights and obligations relating to the interests of their holders pursuant to the applicable Indentures; and (vi) permitting the Indenture Trustees to appear in this Chapter 11 Case.  The Trust Preferred Subordinated Debentures, the Trust Preferred Securities and the Indentures shall terminate completely upon completion of all Distributions by the Indenture Trustees to the Holders of the Trust Preferred Subordinated Debentures and the Trust Preferred Securities, and the Indentures shall terminate and be dissolved upon completion of all Distributions by the Indenture Trustees to the Holders of the Trust Preferred Subordinated Debentures and the Trust Preferred Securities.  For the avoidance of doubt, after the performance by the Indenture Trustees or their respective Representatives of any duties that are

required under the Plan, the Confirmation Order, and the Indentures, the Indenture Trustees and their respective Representatives shall be relieved of and released from all obligations arising under the Indentures and the Indenture Trustees and their respective Representatives shall be fully released and discharged.

5.    As a precondition to payment of any Trustee Fees incurred prior to the Effective Date, each Indenture Trustee shall, at any time after the Effective Date and before the date that is thirty (30) days after the Effective Date, submit to Liquidating RGFC or the Plan Administrator, as applicable, its invoices for payment of such Trustee Fees. Each Indenture Trustee shall also submit a statement reflecting the total amount sought pursuant to such invoice to each other Indenture Trustee. Liquidating RGFC or the Plan Administrator, as applicable, shall, as soon as practicable thereafter, but in no event earlier than twenty (20) days after receipt thereof, and unless the Plan Administrator objects thereto or has received an objection thereto, reimburse the Indenture Trustee in Cash for such Trustee Fees; *provided, however*, that in exchange for such payment, the Indenture Trustee shall not assert a charging Lien for such payment on any Distribution made to and retained by the Indenture Trustee under the Plan on behalf of the Holders of the Subordinated Notes Claims. In the event any such objection as to reasonableness of the Trustee Fees (which shall be the only basis for objection) is made or received by the Plan Administrator (which objection shall be made in writing and served on the Plan Administrator and the Indenture Trustee whose Trustee Fees are the subject of such objection within twenty (20) days of receipt of the applicable invoice or statement, but need not be filed with the Bankruptcy Court), Liquidating RGFC or the Plan Administrator, as applicable, shall, as soon as practicable after such objection period has run, reimburse such Indenture Trustee in Cash only for the unobjected to portion of such Trustee Fees. In the event the parties are unable to resolve the objection, the applicable Indenture Trustee may file a motion or application with the Bankruptcy Court in accordance with Article XI.A of the Plan seeking a determination concerning the reasonableness of such Trustee Fees or exercise their charging Lien under the applicable Indenture. Subsequent submissions by an Indenture Trustee of Trustee Fees incurred after the Effective Date may be made from time to time, but no more frequently than monthly, in the same manner (and with the same objection and payment procedures) as set forth above. Nothing herein shall be construed as an agreement by an Indenture Trustee to a waiver of its charging Lien for any amounts not paid pursuant to this Article, including, without limitation, any fees and expenses (including the fees and expenses of its professionals) accrued prior to or after the Petition Date. In the event an Indenture Trustee chooses to exercise its charging Lien rather than seek payment through the provisions of this Article, such Indenture Trustee may do so through a deduction of amounts received in any Distribution and no other filings or requests shall be necessary.

6.    Notwithstanding Article IV.G.1 and Article IV.G.2, the Plan Administrator shall be deemed the holder of all equity interests in Liquidating RGFC on and after the Effective Date solely to effectuate the terms hereof, *provided, however*, that, notwithstanding any provisions to the contrary contained in the Plan or Plan Administrator Agreement, the Plan Administrator shall not sell, convey or otherwise transfer any equity interest in Liquidating RGFC absent: (a) the filing of a motion with the Bankruptcy Court; (b) notice to the Plan Committee; (c) entry of any order by the Bankruptcy Court authorizing any such sale, conveyance or other transfer in accordance with Article IV.E.1; (d) the filing of all appropriate forms by Liquidating RGFC, prior to any such sale, conveyance or transfer, terminating any continuing reporting obligations under the Securities and Exchange Act of 1934, and any regulations promulgated thereunder; and (e) confirmation that such sale, conveyance or transfer would not result in Liquidating RGFC becoming a public reporting company under the Securities and Exchange Act of 1934, and any regulations promulgated thereunder.

H.    *Vesting of Assets in Liquidating RGFC*

Except as otherwise provided in this Plan or in any agreement, instrument or other document relating thereto, on or after the Effective Date pursuant to section 1141 of the Bankruptcy Code, all property of the Debtor's Estate and any property acquired by the Debtor pursuant hereto shall vest in Liquidating RGFC, free and clear of all Liens, Claims, charges or other encumbrances. Except as may be provided in this Plan, the Plan Administrator Agreement or the Confirmation Order, on and after the Effective Date, Liquidating RGFC may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

I.    *Deregistration*

As soon after the Effective Date as is practicable, the Plan Administrator shall take such action as is reasonably necessary to relieve Liquidating RGFC of the obligation to file periodic reports with the United States

Securities and Exchange Commission or to otherwise comply with the statutory or regulatory requirements of a publicly traded company, including, but not limited to, seeking to deregister the RGFC Stock Interests.

J.   *Merger/Dissolution/Consolidation*

On or as of the Effective Date or as soon as practicable thereafter, and without the need for any consent or approval, the Plan Administrator may, in its sole and absolute discretion: (i) take appropriate corporate action in its capacity as the sole shareholder of Liquidating RGFC to replace or appoint officers and directors of Liquidating RGFC or any subsidiaries controlled by Liquidating RGFC including, without limitation, RAC; (ii) take any other appropriate actions with respect to Liquidating RGFC, RAC, or any of Liquidating RGFC's other subsidiaries; (iii) cause any of Liquidating RGFC's subsidiaries to be merged, dissolved, or otherwise consolidated with each other or with Liquidating RGFC, or (iv) engage in any other transaction with respect to Liquidating RGFC in furtherance of the Plan.

# ARTICLE V.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.   *Initial Distribution Date*

On the Initial Distribution Date or as soon thereafter as is reasonably practicable, Liquidating RGFC or the Plan Administrator, as applicable, shall make the Distributions required to be made under the Plan.

B.   *Disputed Claims Reserve*

1.   Establishment of Disputed Claims Reserve

On the Initial Distribution Date, and after making all Distributions required to be made on such date under the Plan, Liquidating RGFC or the Plan Administrator, as applicable shall establish a separate Disputed Claims Reserve for Disputed Claims, which Disputed Claims Reserve shall be administered by the Plan Administrator. Liquidating RGFC or the Plan Administrator, as applicable, shall reserve in Cash the amount Holders of Disputed Claims would be entitled to receive under the Plan if all such Disputed Claims were to become Allowed Claims (or such lesser amount as may be estimated by the Bankruptcy Court in accordance with Article VI.D hereof).

2.   Maintenance of Disputed Claims Reserve

To the extent that the property placed in the Disputed Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account. Liquidating RGFC or the Plan Administrator, as applicable, shall hold Cash in the Disputed Claims Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed. The Plan Administrator shall, in its sole discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Plan Administrator Agreement, as such Disputed Claims are resolved by a Final Order, and such amounts will be distributable in respect of such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date.

C.   *Quarterly Distributions*

On each Quarterly Distribution Date or as soon thereafter as is reasonably practicable, Liquidating RGFC or the Plan Administrator, as applicable, shall make the Distributions required to be made under the Plan on such date. Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by Liquidating RGFC as applicable, in the Disputed Claims Reserve pursuant to Article V.B.2 and Distributed on the first Quarterly Distribution Date after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution paid on a Quarterly Distribution Date in accordance with this Article V.C.

D.   *Record Date for Distributions*

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the

Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date. Liquidating RGFC shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, Liquidating RGFC as applicable, shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim Filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to Liquidating RGFC as applicable, as of the Distribution Record Date.

E.    *Delivery of Distributions*

1.    General Provisions; Undeliverable Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by Liquidating RGFC or the Plan Administrator, as applicable, at (i) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim Filed by such Holder or (ii) the last known address of such Holder if no Proof of Claim is Filed or if the Debtor, Liquidating RGFC or the Plan Administrator, as applicable, has been notified in writing of a change of address; *provided, however,* that Distributions paid by Liquidating RGFC or the Plan Administrator, as applicable, for the benefit of holders Subordinated Notes Claims shall be made to the appropriate Indenture Trustee under the respective Indenture documents for such obligations. Each such Indenture Trustee shall, in turn, establish a record date for Distributions and administer the Distributions to the respective Holders of Allowed Claims in accordance with the Plan and the applicable Indentures. The Indenture Trustees shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. The Indenture Trustees shall only be required to make Distributions in accordance with the terms of the Plan and the respective Indenture and shall have no liability for actions taken in accordance with the Plan or in reliance upon information provided to the Indenture Trustees in accordance with the Plan, except for liabilities resulting from their own gross negligence or willful misconduct. If any Distribution is returned as undeliverable, Liquidating RGFC or the Plan Administrator, as applicable, may, in its discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as Liquidating RGFC or the Plan Administrator, as applicable, deems appropriate, but no Distribution to any Holder shall be made unless and until Liquidating RGFC or the Plan Administrator, as applicable, has determined the then-current address of the Holder, at which time the Distribution to such Holder shall be made to the Holder without interest. Amounts in respect of any undeliverable Distributions made by Liquidating RGFC or the Plan Administrator, as applicable, shall be returned to, and held in trust by, Liquidating RGFC or the Plan Administrator, as applicable, until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth below in Article V.E.2. Liquidating RGFC or the Plan Administrator, as applicable, shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however,* that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Plan Administrator Agreement.

The Indenture Trustees shall only be required to act and make Distributions in accordance with the terms of the Plan and applicable Indenture Documents and shall have no (i) liability for actions taken in accordance with the Plan or in reliance upon information provided to it in accordance with the Plan or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim as of the Distribution Record Date or who does not otherwise comply with the Plan.

2.    Unclaimed Property

Except with respect to property not Distributed because it is being held in the Disputed Claims Reserve, Distributions that are not claimed by the expiration of one year from the Initial Distribution Date or Quarterly Distribution Date applicable to such Distribution, shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in Liquidating RGFC, and the Claims with respect to which those Distributions are made shall be automatically canceled. After the expiration of such one-year period, the Claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require Liquidating RGFC to attempt to locate any Holder of an Allowed Claim. Except as otherwise provided herein, all

funds or other property that vests or revests in Liquidating RGFC pursuant to this Article shall be distributed by the Plan Administrator in accordance with the provisions of the Plan or the Plan Administrator Agreement.

F.       *Surrender of Canceled Instruments and Securities*

1.       Generally

Except to the extent evidenced by electronic entry, as a condition of receiving any Distribution under the Plan, each holder of a certificated instrument or note must surrender such instrument or note to the appropriate Indenture Trustee or the Plan Administrator or its designee. Any holder of such instrument or note that fails to (i) surrender such instrument or note or (ii) execute and deliver to the appropriate Indenture Trustee or the Plan Administrator to such party an affidavit of loss and/or indemnity reasonably satisfactory before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any Distribution under the Plan. Any Distribution so forfeited shall become the property of the Plan Administrator for distribution to holders of Allowed Claims in accordance with the terms and provisions hereof.

2.       Failure to Surrender Canceled Instruments

If any Holder of an Allowed Claim evidenced by instruments, securities or other documentation canceled pursuant to Article IV.G hereof, fails to surrender such instrument, security or other documentation or comply with the provisions of Article V.F.1 hereof within one year after the Effective Date, its Claim for a Distribution under the Plan on account of such instrument, security, or other documentation shall be discharged, and such Holder shall be forever barred from asserting such Claim against Liquidating RGFC or its property. In such case, any property held on account of such Claim shall be disposed of pursuant to the provisions set forth in Article V.E.2 hereof.

G.       *Manner of Cash Payments Under the Plan or the Plan Administrator Agreement*

Cash payments made pursuant to the Plan or the Plan Administrator Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator or by wire transfer from a domestic bank, at the option of the Plan Administrator.

H.       *Time Bar to Cash Payments by Check*

Checks issued by Liquidating RGFC on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article V.H shall be made directly to the Plan Administrator by the Holder of the Allowed Claim to whom the check was originally issued. Any claim in respect of such voided check shall be made in writing on or before the first anniversary of the Initial Distribution Date or Quarterly Distribution Date on which such check was issued. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of Liquidating RGFC as unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Article V.E.2.

I.       *Compliance with Tax Requirements*

In connection with making Distributions under the Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Plan Administrator may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Plan Administrator to the appropriate authority. If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.E.

603381

J.        *No Payments of Fractional Dollars*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

K.        *Interest on Claims*

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

L.        *No Distribution in Excess of Allowed Amount of Claim*

Notwithstanding anything to the contrary contained in the Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

M.        *Setoff and Recoupment*

Liquidating RGFC or the Plan Administrator, as applicable, may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that the Debtor, the Estate or Liquidating RGFC may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate, or Liquidating RGFC of any right of setoff or recoupment that any of them may have against the Holder of any Claim.

N.        *Contractual Subordination Rights*

Notwithstanding anything in the Plan or any annex, attachment, schedule or exhibit to the Plan, but subject to the terms of the FirstBank Settlement, the subordination rights in respect of the Trust Preferred Subordinated Debentures shall be controlled and governed by the Indentures providing for, and relating to, such subordination rights and nothing in the Plan or any annex, attachment, schedule or exhibit to the Plan, shall amend, modify or impair such rights (or any remedies in respect thereof) in any manner or fashion, provided however, for the avoidance of doubt, the subordination provisions in respect of the Trust Preferred Subordinated Debentures shall be subject to the terms of the FirstBank Settlement.

## ARTICLE VI.

## DISPUTED CLAIMS

A.        *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, the Plan Administrator shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.

B.        *Resolution of Disputed Claims*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Plan Administrator shall have the right to the exclusion of all others (except as to the Professionals' applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make, File, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims.  The costs of pursuing the objections to Claims shall be borne by Liquidating RGFC.

C.      *Objection Deadline*

All objections to Disputed Claims shall be Filed and served upon the Holders of each such Claim on or before the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing.

D.      *Estimation of Claims*

At any time, subsequent to the Effective Date, Liquidating RGFC or the Plan Administrator, as applicable, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor, Liquidating RGFC or the Plan Administrator has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.

E.      *Disallowance of Claims*

Except as otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice or action, order or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

## ARTICLE VII.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

1.      Any executory contracts and unexpired leases that are listed in the Plan Supplement as executory contracts or unexpired leases to be assumed, or are to be assumed pursuant to the terms hereof, shall be deemed assumed by the Debtor as of immediately prior to the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

2.      The Plan shall constitute a motion to reject all executory contracts and unexpired leases not listed as assumed executory contracts or unexpired leases in the Plan Supplement, and the Debtor or Liquidating RGFC, as applicable, shall have no further liability thereunder except with respect to Claims created by the rejection as set forth in Article VII.B. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interests of the Debtor, its Estate and all parties in interest in the Chapter 11 Case.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Claims created by the rejection of executory contracts and unexpired leases pursuant to Article VII.A of the Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed against the Debtor with the Bankruptcy Court and served on Liquidating RGFC no later than thirty (30) days after the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Article VII.A for which Proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtor, Liquidating RGFC, the Debtor's Estate, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of thirty-one (31) days after the Effective Date, be subject to the permanent injunction set forth in Article IX.D. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated under the Plan as General Unsecured Claims against the Debtor and shall be subject to the provisions of Article III of the Plan.

# ARTICLE VIII.

## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

A.     *Conditions to Confirmation:*

The following are conditions precedent to entry of the Confirmation Order that must be satisfied or waived in accordance with Article VIII.C:

1.     The Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.     All objections to confirmation of the Plan are either withdrawn, resolved or overruled.

3.     The most current version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed.

B.     *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived in accordance with Article VIII.C:

1.     The Confirmation Order shall not be stayed and shall be in full force and effect.

2.     The Plan Committee and the Plan Administrator shall have been appointed in accordance with the terms of the Plan and the Plan Administrator Agreement.

C.     *Waiver of Conditions Precedent*

Wilmington Trust, in its capacity as the Subordinated Indenture Trustees, may waive the occurrence of or modify any condition precedent in this Article VIII.  Any such written waiver of a condition precedent set forth in this Article VIII may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  The failure of Wilmington Trust to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

# ARTICLE IX.

## RELEASE, INJUNCTION AND RELATED PROVISIONS

A.     <u>**Exculpation**</u>

**Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Entity for any and all claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other act taken after the Petition Date or omitted to be taken in connection with or in contemplation of the transactions occurring in the Chapter 11 Case;** *provided, however,* **that the foregoing provisions shall (a) have no effect on the liability of any Exculpated Party that results from any act or omission that is determined in a Final Order to be solely due to such Exculpated Party's own gross negligence or willful misconduct; (b) not preclude any Entity from objecting to Accrued Professional Compensation or fees and expenses previously awarded that if unpaid would constitute Accrued Professional Compensation, or Trustee Fees; and (c) not preclude or impair the rights of RGFC's current or former directors and officers to receive payments of defense costs from RGFC's directors' and officers**

liability insurance policies, in accordance with the Bankruptcy Court's March 25, 2011 order modifying the automatic stay to permit payment of such costs [ECF No. 283].

B. _No Release of Co-Obligor or Joint Tortfeasor_

No provision of this Plan, including without limitation, any release or exculpation provision, shall modify, release, or otherwise limit the liability of any Entity other than the Exculpated Parties, including without limitation, any Entity that is a co-obligor, guarantor or joint tortfeasor of an Exculpated Party or that otherwise is liable under theories of vicarious or other derivative liability.

C. _Preservation of Rights of Action_

1. _Vesting of Causes of Action_

(a)     Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Entity shall vest upon the Effective Date in Liquidating RGFC.

(b)     Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Plan Administrator shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action, in accordance with the terms of the Plan Administrator Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.  Without limiting the generality of the foregoing, upon the Effective Date, the Plan Administrator, or Liquidating RGFC, as applicable, shall be deemed substituted for the Debtor in any pending adversary proceedings to which the Debtor was a party, and any appeals arising out of such adversary proceedings.  In accordance with the terms of the Derivative Standing Order, the Plan Administrator shall succeed to and replace Wilmington Trust's standing to pursue any claims, investigations, or causes of action being pursued by Wilmington Trust in accordance with the Derivative Standing Order, and Wilmington Trust's standing and authority to pursue such claims will terminate, as set forth in the Derivative Standing Order.

(c)     Causes of Action and any recoveries therefrom shall remain the sole property of Liquidating RGFC (for the sole benefit of Entities entitled to Distributions under the Plan), as the case may be, and Holders of Claims shall have no right to any such recovery.

2. _Preservation of All Causes of Action Not Expressly Settled or Released_

(a)     Unless a Cause of Action against a Holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), Liquidating RGFC and the Plan Administrator expressly reserve such Cause of Action for later adjudication by Liquidating RGFC or the Plan Administrator (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere or of which the Debtor, Liquidating RGFC or the Plan Administrator may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor, Liquidating RGFC or the Plan Administrator at this time or facts or circumstances which may change or be different from those the Debtor, Liquidating RGFC or the Plan Administrator now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of _res judicata_, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or occurrence of the Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).  In addition, the Debtor, Liquidating RGFC and the Plan Administrator expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b)     Subject to the immediately preceding paragraph, any Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has

received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor, should assume that any such obligation, transfer, or transaction may be reviewed by the Plan Administrator subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a Proof of Claim against the Debtor in its Chapter 11 Case; (ii) the Debtor, Liquidating RGFC or the Plan Administrator have objected to any such Entity's Proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtor, Liquidating RGFC or the Plan Administrator have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtor, Liquidating RGFC or the Plan Administrator as disputed, contingent or unliquidated.

D. *Release and Injunction*

1. **From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, Liquidating RGFC, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.**

2. **Until all property of the Debtor's Estate has been liquidated, collected and/or distributed, or abandoned as provided herein, and Liquidating RGFC has made all Distributions contemplated by the Plan and except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, Liquidating RGFC, or their successors and assigns and their assets and properties, any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.**

3. **The rights afforded in the Plan and the treatment of all Claims and Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor or Liquidating RGFC or any of their assets or properties. On the Effective Date, all such Claims against, and Interests in, the Debtor shall be satisfied and released in full.**

4. **Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim against or Interest in the Debtor that is satisfied and released hereby, from:**

   (a) **commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, Liquidating RGFC, their successors and assigns and their assets and properties;**

   (b) **enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, Liquidating RGFC, their successors and assigns and their assets and properties;**

   (c) **creating, perfecting or enforcing any encumbrance of any kind against the Debtor, Liquidating RGFC or the property or Estate of the Debtor or Liquidating RGFC;**

   (d) **asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor or against the property or Estate of the Debtor or Liquidating RGFC, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed Proof of Claim; or**

   (e) **commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim against or Interest in the Debtor or Cause of Action that is released or settled hereunder.**

5. **For the avoidance of doubt, the injunction implemented pursuant to this Plan shall not preclude or impair the rights of RGFC's current or former directors and officers to receive payments of defense costs**

**from RGFC's directors' and officers liability insurance policies, in accordance with the Bankruptcy Court's March 25, 2011 order modifying the automatic stay to permit payment of such costs [ECF No. 283].**

E.      *Releases of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate shall be fully released and discharged (except for the charging Liens of the Indenture Trustees to the extent the Trustee Fees or any other fees owed to the Indenture Trustees under the Indentures are not paid pursuant to the Plan) and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to Liquidating RGFC and the Plan Administrator.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, Liquidating RGFC, the Plan Administrator and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtor or Liquidating RGFC, as applicable, is a party or with respect to which the Debtor or Liquidating RGFC, as applicable, may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XI.C adding executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

4.      ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by Liquidating RGFC or the Plan Administrator after the Effective Date, *provided, however,* that Liquidating RGFC and the Plan Administrator shall reserve the right to commence actions in all appropriate jurisdictions;

6.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

7.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.      enforce Article IX.A and Article IX.C;

10.     enforce the injunction set forth in Article IX.D;

603381

11.  resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.  enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.  correct any defect, cure any omission or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of this Plan;

14.  modify any provision of this Plan to the fullest extent permitted by the Bankruptcy Code;

15.  determine any amendments to the Schedules;

16.  resolve any other matters that may arise in connection with, or relate to, the Plan Administrator Agreement, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

17.  enter an order and/or the decree contemplated in section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 concluding the Chapter 11 Cases.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A.      *Final Fee Applications and Initial Trustee Fees*

The deadline for submission by Professionals of applications for Bankruptcy Court approval of Accrued Professional Compensation, and by each Indenture Trustee for payment of any disputed Trustee Fees incurred on or before the Effective Date, shall be 30 days after the Effective Date.

B.      *Payment of Statutory Fees*

Notwithstanding any other provision of this Plan, the Debtor shall pay within ten days after the Effective Date all fees incurred under 28 U.S.C. § 1930(a)(6) attributable to the Debtor for the period ending on the Effective Date.  For the period commencing on the Effective Date through the earlier of (a) the closing of the Bankruptcy Cases by the issuance of a final decree by the Bankruptcy Court and (b) entry of an order dismissing or converting the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code, the Plan Administrator shall (x) file with the Bankruptcy Court the quarterly operating reports regarding Liquidating RGFC for the post-confirmation period and (y) pay all fees incurred under 28 U.S.C. § 1930(a)(6) based on the disbursements made pursuant to the Plan.

C.      *Modification of Plan*

Subject to the limitations contained in the Plan: (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtor, Liquidating RGFC or the Plan Administrator, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

D.      *Revocation of Plan*

The Debtor reserves the right to withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtor withdraws the Plan, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any claims by or against, or any

Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

E.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

F.    *Governing Law*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Puerto Rico, without giving effect to the principles of conflict of laws thereof.

G.    *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be deemed to be an admission or waiver of any rights of: (i) the Debtor with respect to the Holders of Claims or Interests or other parties-in-interest; or (ii) any Holder of a Claim or other party-in-interest prior to the Effective Date.

H.    *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

I.    *Section 1125(e) Good Faith Compliance*

The Debtor and each of its Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

J.    *Further Assurances*

The Debtor, Liquidating RGFC, the Plan Administrator, all Holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

K.    *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by first class U.S. mail, postage prepaid as follows:

To the Debtor:

R&G Financial Corporation
1225 Ponce de Leon
VIG Tower, Suite 106
San Juan, PR 00907

*with a copy to:*

PATTON BOGGS, LLP
Attn:  Brent McIlwain
2000 McKinney Avenue, Suite 1700
Dallas, Texas, 75201
Telephone:     (214) 758-1500
Fax:             (214) 758-1550
Email:  bmcilwain@pattonboggs.com
-and-
PIETRANTONI MENDEZ & ALVAREZ, LLP
Attn:  Jorge I. Peirats
209 Muñoz Rivera Avenue, 19th Floor
San Juan, Puerto Rico  00918
Telephone:     (787) 274-1212
Fax:             (787) 274-1470
Email:  jpeirats@pmalaw.com

To Wilmington Trust:

Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Attn:  Todd C. Meyers
Attn:  Mark A. Fink
Telephone:     (404) 815-6500
Fax:             (404) 815-6555
Email:  tmeyers@kilpatricktownsend.com

To the Plan Administrator:     [_____]


L.      *Filing of Additional Documents*

On or before the Effective Date, the Debtor or Liquidating RGFC, as applicable, may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

M.      *Aid and Recognition*

The Debtor, Liquidating RGFC or the Plan Administrator, as the case may be, shall, as needed to effect the terms hereof, request the aid and recognition of any court or judicial, regulatory or administrative body in any nation, province or state.

N.      *Document Retention*

From and after the Effective Date, the Debtor, Liquidating RGFC, the Plan Administrator, and any transferee of the Debtor's Documents, as the case may be, shall preserve and maintain all of the Documents, whether retained by the Debtor or any successor to the Debtor, or transferred to Liquidating RGFC, the Plan Administrator pursuant to the Plan Administrator Agreement, or such other transferee pursuant to the Plan; and any successors to the Debtor, Liquidating RGFC, the Plan Administrator and/or such other transferee shall not destroy or otherwise abandon any such Documents absent further order of this Court or a court of competent jurisdiction after a hearing upon notice to parties in interest with an opportunity to be heard.

Dated:  May 31, 2011                          Respectively Submitted,


R&G FINANCIAL CORPORATION